Gregory Allen HARVEY, By and Through his legal guardian, Lyle Dean HARVEY, Plaintiff–Appellant,

v.

GENERAL MOTORS CORPORATION, Defendant–Appellee.

No. 87–2593.

United States Court of Appeals, Tenth Circuit.

April 25, 1989.

Jack R. Gage of Whitehead, Gage & Davidson, Cheyenne, Wyo. (Michael B. Moore of Cartwright, Slobodin, Bokelman, Borowsky, Wartnick, Moore & Harris, Inc., San Francisco, Cal., with him, on the briefs), for plaintiff-appellant.

Andrew Langan, of Kirkland & Ellis, Chicago, Ill. (Thomas G. Gorman of Hirst & Applegate, Cheyenne, Wyo., and John T. Hickey, Jr. of Kirkland & Ellis, Chicago, Ill., with him, on the brief), for defendant-appellee.

Before HOLLOWAY, Chief Judge, BRORBY, Circuit Judge, and SAFFELS,* District Judge.

BRORBY, Circuit Judge.

This product liability case involves claims for enhanced personal injuries suffered by Gregory Allen Harvey (Harvey) when the 1979 Chevrolet Corvette in which he was riding crashed on a rural Wyoming road. Harvey sued General Motors Corporation (GM), claiming that the "T–Top" latch of the vehicle was defective and caused Har- vey's ejection from the vehicle and conse- quent injuries. Jurisdiction was based on diversity of citizenship, 28 U.S.C. § 1332 (1966 & Supp.1988). The case was tried to a jury on theories of strict liability and negligence. The jury awarded no dam- ages. Pursuant to Fed.R.Civ.P. 59(a), Har- vey filed a Motion for a New Trial on damages. The trial court denied the mo- tion. Harvey appeals the Judgment en- tered on the verdict and the Order Denying the Motion for a New Trial. Our jurisdic- tion vests pursuant to 28 U.S.C. § 1291 (Supp.1988). We AFFIRM.

## Facts

On July 6, 1985, Harvey and a friend, Christopher Schade, drove Harvey's 1979 Chevrolet Corvette on a road south of Han- na, Wyoming. Harvey and Schade had been drinking and Schade had been smok- ing marijuana sometime during the day. Traveling at an excessive rate of speed, they came upon sheep in the road. Schade swerved, and lost control of the vehicle. The Corvette rolled off the road and was "totaled." During the rollover, the Cor- vette's T–Top roof panels separated from the vehicle. Harvey, who was not wearing a seat belt, was ejected from the vehicle. He sustained severe bodily injuries that resulted in an amputated leg and brain damage. At trial, Harvey presented un- challenged evidence that his medical bills were $185,140. His unchallenged lost wages for 1985, 1986 and 1987 were $76,- 196. His expert economist, although chal- lenged, testified that the present value of Harvey's future lost earnings and fringe benefits was $1,537,634, and that the present value of Harvey's future cost of attendant care was $1,017,693. Additional- ly, the record presents evidence of loss of enjoyment of life, pain and suffering, and permanent debilitation.

The trial court instructed the jury on Harvey's theory of enhanced injuries: that a design defect which does not cause an accident does not subject a manufacturer

* The Honorable Dale E. Saffels, United States District Judge for the District of Kansas, sitting by designation.

to liability for the entire damage, but subjects it to liability only for injuries caused over and above those which would have occurred without the defective design. The jury found: the vehicle was manufactured in a defective condition, was unreasonably dangerous to the consumer or user, and reached Harvey without substantial change in condition; and the defective condition was a proximate cause of Harvey's injuries. The jury further found that GM was negligent and its negligence was a proximate cause of Harvey's injuries. The jury found Harvey negligent as well, and found that his negligence also was a proximate cause of the injuries. The jury apportioned total fault to Harvey and GM at fifty percent each and awarded no damages.

## I. New Trial

Harvey contends that the jury verdict was inconsistent in that the jury found multiple liability and proximate causation against GM, and yet awarded Harvey zero damages. He argues that the jury should have returned a dollar damage figure, even if it found Harvey 100 percent at fault and 100 percent negligent, and that the result demonstrates the jury was confused or consciously disregarded the instructions of the trial court. The trial court viewed the verdict as consistent with the proposition that Harvey did not establish the extent of *enhanced* injuries attributable to the defective design of the Corvette. We affirm the trial court's ruling.

We review the trial court's denial of Harvey's Motion for a New Trial under an abuse of discretion standard. A district court has broad discretion in deciding whether to grant a motion for a new trial. *Patty Precision Products Co. v. Brown & Sharpe Mfg. Co.,* 846 F.2d 1247, 1251 (10th Cir.1988) (citing *Whiteley v. OKC Corp.,* 719 F.2d 1051, 1058 (10th Cir.1983)). Review is limited to whether the district court's refusal to set aside the jury's verdict constituted a manifest abuse of its discretion. *Karns v. Emerson Elec. Co.,* 817 F.2d 1452, 1456 (10th Cir.1987). *See also Suggs v. State Farm Fire & Casualty Co.,* 833 F.2d 883, 887 (10th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1732, 100 L.Ed.2d 196 (1988) ("[t]he decision of a trial court to grant or deny a motion for a new trial will only be overturned on appeal upon a showing of a 'clear abuse of discretion,'" quoting *Trujillo v. Goodman,* 825 F.2d 1453, 1461 (10th Cir.1987)).

■ Although Harvey cites *Hopkins v. Coen,* 431 F.2d 1055, 1059 (6th Cir.1970), for the proposition that where a verdict is inconsistent the granting of a timely motion for a new trial is not discretionary but is mandatory, the case does not alter our review, particularly in view of our holding that the verdict is consistent. *Hopkins* dictates a result on given facts. In applying the proper standard of review, we look to the nature of the ruling appealed rather than the nature of the contentions raised. We will not disturb the trial court's denial of a motion for a new trial absent a showing of abuse of discretion.

■ Harvey contends on appeal, as he did at the trial level unsuccessfully, that the verdict is inconsistent with the jury's answers to the special interrogatories.[1]

1. The Verdict and Special Interrogatories reads as follows:

 We, the jury, duly empaneled and sworn in this case, do find by a preponderance of the evidence, as follows:

 A. *Strict Liability Claims*

 1. Was the 1979 Corvette manufactured in a defective condition unreasonably dangerous to the consumer or user?
 YES X NO___

 2. Did the 1979 Corvette reach the ultimate consumer without substantial change in the condition in which the defendant, General Motors Corporation, manufactured it?
 YES X NO___

 3. Was the allegedly defective condition of the 1979 Corvette a proximate cause of injury to the plaintiff, Gregory Allen Harvey?
 YES X NO___

 4. Was the plaintiff Gregory Allen Harvey at fault?
 YES X NO___

 5. Was the fault, if any, of the plaintiff Gregory Allen Harvey a proximate cause of his injuries?
 YES X NO___

 6. Considering all of the fault at one hundred percent, what percentage of the total fault was attributable to each of the following:

The general rule regarding a court's role in evaluating the jury's verdict is the same under Fed.R.Civ.P. 49(a) (special verdict) and Fed.R.Civ.P. 49(b) (general verdict with interrogatories). In either instance, the trial court has a duty to try to reconcile the answers to the case to avoid retrial. Regarding Rule 49(a), Wright and Miller explain as follows:

> It is the duty of the court to attempt to harmonize the answers, if it is possible under a fair reading of them. "Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." In determining whether there is inconsistency in the jury's findings, the findings are to be construed in the light of the surrounding circumstances and in connection with the pleadings, instructions, and issues submitted.

Wright & Miller, *Federal Practice and Procedure: Civil* § 2510, at 515–17 (1971) (footnotes omitted) (quoting *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962)).

Likewise, when submitting a general verdict and interrogatories under Rule 49(b), both the trial and appellate courts have a duty to reconcile the two if any seeming conflict arises. "It is the duty of the court to reconcile the two if reconciliation is possible." Wright & Miller, § 2513, at 528–29. In *Schaafsma v. Morin Vermont Corp.*, 802 F.2d 629, 635 (2d Cir.1986), the Second Circuit elaborated on this principle as follows:

> In fairness to trial courts and in order to preserve parties' Seventh Amendment rights, appellate courts "struggle" to find a way of reconciling seemingly inconsistent interrogatory answers and verdicts: " 'Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way.' " [*Julien J.*] *Studley, [Inc. v. Gulf Oil Corp.*, 407 F.2d 521, 527 (2d Cir.1969)] (quoting *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines*, 369 U.S. 355, 364, 82 S.Ct. 780, 786, 7 L.Ed.2d 798 (1962)); *see Fiacco v. City of Rensselaer, New York*, 783 F.2d 319, 325 (2d Cir.1986); *Davis v. West Community Hospital*, 755 F.2d 455, 465 (5th Cir.1985); *Cote v. Estate of Butler*, 518 F.2d 157, 161 (2d Cir.1975); *cf. Merchant v. Ruhle*, 740 F.2d 86, 88–92 (1st Cir.1984) (discussing reconciliation of inconsistent general verdicts). Only when jury verdicts are logically incompatible is it error for the district court not to grant a new trial. *Bernardini v. Rederi A/B Saturnus*, 512 F.2d 660, 662–64 (2d Cir.1975); *see Stone v. City of Chicago*, 738 F.2d 896, 899 (7th Cir.1984).

There is no question that the trial and appellate courts must attempt to reconcile

| | | |
|---|---|---|
| GENERAL MOTORS CORPORATION | (0% to 100%) | 50% |
| GREGORY ALLEN HARVEY | (0% to 100%) | 50% |
| | TOTAL | 100% |

*B. Negligence Claims*

1. Was the defendant General Motors Corporation negligent?

YES X NO___

2. Was the negligence, if any, of defendant General Motors Corporation a proximate cause of plaintiff Gregory Allen Harvey's injuries?

YES X NO___

3. Was the plaintiff Gregory Allen Harvey negligent?

YES X NO___

4. Was the negligence, if any, of plaintiff Gregory Allen Harvey a proximate cause of his injuries?

YES X NO___

5. Considering all of the negligence at one hundred percent, what percentage of the total negligence was attributable to each of the following:

| | | |
|---|---|---|
| GENERAL MOTORS CORPORATION | (0% to 100%) | 50% |
| GREGORY ALLEN HARVEY | (0% to 100%) | 50% |
| | TOTAL: | 100% |

*C. Damages*

1. Without considering the percentages of fault found in your answers to Questions A6 and B5, what sum of money, if any, would fairly compensate Gregory Allen Harvey for damages directly resulting from the accident?

$ –0–

rather than look for inconsistency in verdicts when such a question arises.

■ The reconciliation of the jury's responses, however, is not merely to one another, but to the entire case. "Where there is a view of *the case* that makes the jury's answers to special interrogatories consistent, they must be resolved that way." *Atlantic & Gulf Stevedores*, 369 U.S. at 364, 82 S.Ct. at 786 (emphasis added). *But see Bass v. Dehner*, 103 F.2d 28, 34 (10th Cir.), *cert. denied*, 308 U.S. 580, 60 S.Ct. 100, 84 L.Ed. 486 (1939) (" 'Presumptions and intendments will not be indulged to establish a contradiction, it being the duty of the court to reconcile or harmonize the special findings or answers to special interrogatories *with each other*, if it can reasonably be done,' " (quoting 64 C.J. § 964, at 1176) (emphasis added)). More recently, in *Diamond Shamrock Corp. v. Zinke & Trumbo, Ltd.*, 791 F.2d 1416, 1425 (10th Cir.), *cert. denied*, 479 U.S. 1007, 107 S.Ct. 647, 93 L.Ed.2d 702 (1986), we reconciled the jury's verdict on each separate cause of action to the case rather than to one another.

■ In denying Harvey's Motion for a New Trial, the trial judge reconciled the verdict and special interrogatories with jury instruction No. 15. Instruction No. 15 reads:

In this case plaintiff alleges that the Corvette's design—specifically the design of the latching mechanism on the T-Top roofs—enhanced plaintiff's injuries by increasing their severity. A design defect which does not cause an accident does not subject the manufacturer to liability for the entire damage, but the defendant manufacturer would be liable for that portion of the injury caused by the defective design over and above the injury that probably would have occurred as a result of the impact or collision absent the defective design. If you find that the defendant is liable to the plaintiff, the defendant manufacturer is in no event liable to compensate the plaintiff for any damages or injuries which would have occurred as a result of the collision if the T-Top roof panel had stayed in place.

The trial judge reasoned that the verdict of the jury was consistent with the proposition that Harvey did not establish the extent of *enhanced* injuries attributable to the defective design of the Corvette, as follows:

Although certain evidence of damages was introduced at trial essentially unchallenged, the jury may have found that those were "damages or injuries which would have occurred as a result of the collision if the T-Top roof panel had stayed in place." Thus, the damage award is not inadequate on its face.

Order Denying Motion for New Trial. The trial court further concluded that the verdict and answers to special interrogatories were not inconsistent, and did not indicate that the jury was confused or that it abused its power.

In reviewing the trial court's action, we perceive no error. First, the trial court did not err in determining that the verdict was not inconsistent. Cases addressing inconsistent verdicts present circumstances where the verdict is contrary to any proper reading of the instructions. In *Cheney v. Moler*, 285 F.2d 116 (10th Cir.1960), this court reversed the trial court's denial of a motion for a new trial. In *Cheney*, plaintiff sued defendant for injuries sustained in a fight. Defendant counterclaimed for his injuries. The jury returned a verdict for the plaintiff on the complaint and against the defendant on the counterclaim. Even though plaintiff lost an ear as a result of the fight, the jury awarded no damages. On appeal, this court considered the several combinations of verdicts which could have been consistent with the applicable law and the facts, and determined that the verdicts rendered did not fall within any of the reconcilable results. Although Harvey argues that *Cheney* is on "all fours" with the instant case, we view it as distinguishable. In *Cheney* the plaintiff's case was not submitted to the jury on the theory of enhanced damages. Unlike the verdict in Harvey, the verdicts in *Cheney* could not be reconciled with the instructions. Although *Cheney* sets an example of a prop-

er reversal based on inconsistency, it does not apply to reverse the ruling herein.

■ Second, the case law cited by Harvey does not persuade us that the trial court misperceived the law. Citing *Fox v. Ford Motor Co.*, 575 F.2d 774 (10th Cir. 1978), Harvey argues that the finding of proximate cause under the strict liability count necessitates a damage award. We are not persuaded by his argument. In *Fox*, plaintiffs brought actions for wrongful death under Wyoming law. They alleged three theories of liability: negligence, strict liability, and breach of warranty. On appeal, the central question was whether the Ford Motor Company could be held liable for the deaths caused when a car of its manufacture was struck head-on by a vehicle crossing the center line. In *Fox*, we determined that Wyoming probably would follow the crashworthiness doctrine; that a manufacturer owes a duty to persons using its motor vehicles to take such precautions in their design and manufacture as to prevent injuries that can be reasonably foreseen. We further held that the jury could find that the absence of shoulder harnesses in the rear passenger compartment, lack of energy-absorbing materials in the backs of the front seats, and the fact that the seat belts were set at the wrong angle created an unreasonable risk of injury. In sum, we held in *Fox* that the trial court did not err in deciding that Wyoming would adopt the majority rule of crashworthiness if called upon to consider it.

The section of the *Fox* opinion on which Harvey relies addresses apportionment of damages. In *Fox*, we decided that Wyoming would adopt the rule stated in *Larsen v. General Motors Corp.*, 391 F.2d 495, 503 (8th Cir.1968):

> [T]he manufacturer should be liable for that portion of the damage or injury caused by the defective design over and above the damage or injury that probably would have occurred as a result of the impact or collision absent the defective design.

This language is identical to the trial court's language in the instant case in instruction No. 15. In *Fox* we went on to explain:

> Generally this duty to prove so-called enhanced damages is simply a part of the plaintiff's responsibility to prove proximate cause, that is, that the defendant in such a case is liable only for those damages which are within the orbit of risk created by him, but Ford would have us say that the plaintiffs were required to prove with specificity the injuries which flowed specifically from its deficiencies.

*Id.* at 787. We declined Ford's invitation, and explained:

> We fail to see any difference between this type of case and the other case in which two parties, one passive, the other active, cooperate in the production of an injury. Each one's contribution in a causal sense must be established. *Damages may be apportioned between the two causes if there are distinct harms or a reasonable basis for determining the causes of injury.* Restatement of Torts, Second, § 433A.

*Id.* at 787 (emphasis added). In our view, *Fox* does not tell us that a finding of causation necessitates an award of damages. Rather, *Fox* permits apportionment of damages if there are distinct harms or there is a reasonable basis for determining the causes of injury.

■ Under Wyoming law, an enhancement instruction should not even be given unless the injuries are capable of logical, reasonable, or practical division. *Chrysler Corp. v. Todorovich*, 580 P.2d 1123, 1131 (Wyo.1978). By the manner in which the plaintiff structured his case, he postulated that the injuries were divisible. Harvey does not claim error in the giving of instruction No. 15, which defines plaintiffs' theory of recovery for enhanced injuries. Furthermore, the court instructed the jury on the plaintiff's burden of proof and the consequence of his failure to meet his burden.[2] Under the instructions and based on

---

2. Instruction No. 5 reads as follows:

> The burden is on the plaintiffs in a civil action, such as this, to prove every essential

the record, the jury could have determined that plaintiff failed to prove the extent of enhanced injuries.

Failure to prove enhanced damages has occurred in other cases as well. In *Curtis v. General Motors Corp.*, 649 F.2d 808, 812–13 (10th Cir.1981) (applying Colorado law), this court held that plaintiffs failed, as an essential part of a cause of action based on crashworthiness doctrine, to show enhancement of injury where the medical witness testified that he could not ascertain the cause of plaintiff's injury with any degree of medical certainty. In so holding, we stated that expert testimony was required in order for the jury to avoid pure speculation as to enhancement of injury. "The jury was ... left to decide a question which the expert said he could not answer." *Id.* at 813. In the instant case, plaintiff presented evidence that ejection from the vehicle was the cause of plaintiff's injury. What was never established, however, was that the injuries were over and above those which would have been sustained had the T–Top remained in place and had Harvey remained inside the vehicle. On this point experts testified that either the difference was impossible to assess, or the damage could have been worse had Harvey remained inside the vehicle in his unrestrained condition during the crash. Consequently, the jury reasonably could have determined that plaintiff's case failed because a finding of enhanced damages could not be made other than on speculation.

Harvey also relies heavily upon *Shipp v. General Motors Corp.*, 750 F.2d 418 (5th Cir.1985), for the proposition that the jury's finding that General Motors' defective product was a proximate cause necessitates a damage award. *Shipp* does not support Harvey's argument for two reasons: (1) *Shipp* was decided under Texas law, not Wyoming law; and (2) we read our opinion in *Fox v. Ford Motor Co.*, 575 F.2d 774 (10th Cir.1978), in a different light than did the Fifth Circuit in *Shipp*.

In seeking to persuade us that the verdict was inconsistent, Harvey also misplaces reliance upon *Diamond Shamrock Corp. v. Zinke & Trumbo, Ltd.*, 791 F.2d 1416, 1425 (10th Cir.), *cert. denied*, 479 U.S. 1007, 107 S.Ct. 647, 93 L.Ed.2d 702 (1986). In *Diamond Shamrock*, the jury returned verdicts in favor of plaintiff on its contract claim and in favor of defendants on their negligence claim. This court held that the verdicts were not inconsistent and should not have been set aside because the trial involved separate causes of action and the relationship of the parties was not legally identical with regard to each cause of action. In so holding, we gave two examples of inconsistency, neither of which applies herein:

> In those cases where the several causes of action are identical and defended on the same ground, a verdict for the plaintiff on one cause of action and for the defendant on another is inconsistent. Further, if two causes of action are of such a nature that recovery can be had only as to one, verdicts in favor of a plaintiff and against the defendants on both causes of action are inconsistent.

*Id.* at 1425. The instant case is far removed from the examples in *Diamond Shamrock*. Harvey sought recovery for enhanced injuries on both negligence and strict liability theories. The jury found multiple proximate causes on both theories and found Harvey at fault under both theo-

---

element of their claim by a preponderance of the evidence. If the proof should fail to establish any essential element of the plaintiffs' claim by a preponderance of the evidence in the case, the jury should find for the defendant.

To establish by a preponderance of the evidence means to prove that something is more likely so than not so. In other words, a preponderance of the evidence in the case means such evidence as, when considered and compared with that opposed to it, has more con-vincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true.

In determining whether any fact in issue has been proved by a preponderance of the evidence in the case, the jury may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

ries. We agree with the trial court that the verdict of the jury in awarding no damages is consistent with the proposition that the plaintiff did not establish the extent of enhanced injuries, if any, attributable to the defective design of the T–Top on the Corvette. Consequently, we find no abuse of discretion in the trial court's denial of Harvey's Motion for a New Trial.

## II. Harvey's Negligence

### A. Schade's blood sample

■ Harvey contends the trial court erred when it allowed testimony about the driver's blood-alcohol level. Harvey's argument is without merit. First, the blood sample was obtained in a criminal investigation pursuant to a Wyoming Highway Patrolman's belief at the hospital that Harvey would not survive and the driver, Schade, could be charged with a violation of Wyoming law. In Wyoming, if the facts give rise to a charge of vehicular homicide or the potential for such a charge, an investigating officer may order the drawing of blood for laboratory analysis. *Van Order v. State,* 600 P.2d 1056, 1058 (Wyo.1979).

Further, the evidence entered this case through stipulation of the parties, which reads as follows:

> With respect to the blood samples taken from both Christopher Schade and Gregory Allen Harvey which were both tested for alcohol and/or ethanol content, the parties waive all objections regarding foundation as to the circumstances surrounding the taking of the blood samples. In addition the parties, through counsel, specifically stipulate and agree that the referenced blood samples were taken by duly authorized persons using proper sterile equipment; that the blood samples were properly labeled and preserved; that the care and transportation of the blood samples were proper; that the identities of the persons processing the blood samples are known to the attorneys for the parties; and the reports made with respect to the blood alcohol

contents of the blood samples were made pursuant to a duty imposed by law or required by the nature of the office of the Wyoming Chemical Testing Program and/or of the Memorial Hospital of Carbon County, Wyoming.

Further, we are not persuaded by Harvey's argument that the stipulation merely goes to foundation.[3] The trial court did not abuse its discretion in admitting the test results into evidence.

### B. Dr. Wingeleth's testimony

■ Harvey next argues that the trial court abused its discretion in permitting Dale Wingeleth, Ph.D., to testify as an expert witness on behalf of GM. Harvey states that Wingeleth was listed by GM as a lay witness and used at trial as an expert. The record, however, does not support Harvey's argument. By order of the trial court prior to trial, the court limited Dr. Wingeleth's testimony to "foundational testimony relative to the blood test performed upon Chris Schade." GM offered into evidence Dr. Wingeleth's gas chromatograph test results. Harvey objected to admission of the test results on foundational grounds, stating:

> MR. MOORE: Your Honor, we would object, there's been no foundation that the test was done accurately. There's been no expert opinion that the test results which are shown there are reliable, and there can be none since Mr. Wingeleth was not designated as an expert witness in this case and *has not been asked and should not be able to be asked expert testimony.* We also object for the reasons we previously stated with respect to the blood sample which I won't repeat.

(Emphasis added.) The trial judge admitted the exhibits into evidence with the following comments:

> THE COURT: I'm sure Dr. Wingeleth's testimony comes as no surprise to you, you are fully aware of it. The objections on the ground of surprise are overruled. I think there's a sufficient

---

**3.** Because the taking of Schade's blood sample was for purposes of criminal investigation, we do not address Harvey's argument that the phy-sician/patient privilege applies to exclude the evidence. *See McCormick on Evidence,* § 99 at 247 (3d ed. 1984).

foundation for these reports. The objections are overruled and the exhibits are received.

After the test results were admitted into evidence, counsel for GM examined Dr. Wingeleth without further objection regarding the contents of the admitted documents. Counsel for Harvey then cross-examined him. In our view, the testimony did not exceed the court's pretrial order and the ruling did not constitute an abuse of discretion.

### C. Harvey's rebuttal toxicologist

■■■ Harvey next asserts the trial court abused its discretion in refusing the testimony of his rebuttal toxicologist, Dr. Verdeal. Harvey claims that Dr. Wingeleth, "an unnoticed expert for G.M.," testified that Schade was substantially impaired by marijuana, and that the court should have permitted Harvey to call Dr. Verdeal to rebut Dr. Wingeleth's gas chromatograph readouts. GM asserts that Dr. Verdeal was not a proper rebuttal witness because the evidence of Schade's drug use was no surprise to Harvey. GM states that in the pretrial memorandum and at pretrial conference, GM disclosed its intention to use the evidence. GM notes that although Harvey's general counsel announced in opening statement: "They [GM] will even try to show he [Schade] had been using marijuana. And we will disprove that totally," Harvey did not endorse Dr. Verdeal as an expert witness, did not list her as a trial witness, and did not offer her for a pretrial deposition.

In refusing to permit Harvey to call Dr. Verdeal, the trial court observed:

The question is whether or not this is surprise. The issue is why didn't you endorse this person as an expert and give the substance of the testimony at the final pretrial conference when you knew of these issues that were going to arise.

. . . .

I can't believe that you were surprised by this. I think you knew exactly what Wingeleth was going to say even if you didn't depose him, you certainly knew the fate of the testimony.

. . . .

I think you should have endorsed this witness as an expert witness and I think that it comes as a surprise to the defendant and the defendant has had no opportunity to depose this witness. The rules, I don't think, bend that far. The objection to the offer of proof is sustained.

In our view, this issue arose due to Harvey's trial strategy. We perceive no abuse of discretion in the trial court's ruling.

### D. Imputed negligence

■■■ Harvey argues that the trial court abused its discretion when it gave a jury instruction allowing the jury to impute the negligence of the driver, Schade, to the passenger, Harvey. The giving or refusal to give tendered jury instructions in a diversity action, as here, is governed by federal law and rules. *Brownlow v. Aman*, 740 F.2d 1476, 1490 (10th Cir.1984); *Achin v. Begg Tire Center*, 694 F.2d 226, 228 (10th Cir.1982). An instruction is properly given if supported by competent evidence. *Brownlow*, 740 F.2d at 1490. However, a determination of the substance of a jury instruction in a diversity case is a matter of state substantive law. *Id.*

Instruction No. 26 reads as follows:

If you find that the driver, Chris Schade, was negligent in his operation of the Corvette, then you may consider whether this negligence should be imputed to the plaintiff. Schade's negligence may be imputed to Harvey if you find that Harvey exercised actual control over the operation of the vehicle at the time of the accident. In order to exercise actual control, it is not necessary that Greg Harvey actually operated the vehicle. You may find that Harvey had some degree of actual control over the operation of the vehicle if you find that Harvey gave instructions to Schade and directed Schade as to his operation of the vehicle.

Harvey argues that the instruction was improper because the case presented no evidence of actual control or joint economic enterprise as is required under Wyoming law. Our review of Wyoming law reveals no definition of the term "actual control".

Harvey also cites *Martinez v. Union Pacific R.R. Co.*, 714 F.2d 1028, 1032 (10th Cir. 1983), for the following proposition:

> A driver's negligence under Wyoming law cannot be imputed to a passenger unless the conduct of the passenger had a material bearing upon the driver's operation of the car at the time of the accident.

Likewise, we find no definition of "material bearing."

■ Our reading of *Palmeno v. Cashen*, 627 P.2d 163 (Wyo.1981), *Porter v. Wilson*, 357 P.2d 309 (Wyo.1960), and *Edwards v. Harris*, 397 P.2d 87, 90 (Wyo.1964), however, persuades us that the trial judge in the instant case did not abuse his discretion in giving the challenged instruction. In *Palmeno*, the trial court found that the passenger had no control over the vehicle in which she was riding at the time her injuries occurred, and refused to impute the negligence of the driver to her. On appeal, the Wyoming Supreme Court stated:

> The law in this state is well settled that imputation of a driver's negligence will not occur unless the spouse-owner-passenger had actual control over the vehicle at the time of the accident. *Porter v. Wilson*, Wyo.1960, 357 P.2d 309; *Edwards v. Harris*, Wyo.1964, 397 P.2d 87; *Hume v. Mankus*, Wyo.1965, 401 P.2d 703; *Mooneyham v. Kays*, Wyo. 1965, 405 P.2d 267. The trial judge found that appellee had no control over the vehicle in which she was riding at the time her injuries occurred. There is substantial evidence in the record, as we have previously outlined, to support that finding; thus we must uphold it. Since appellee was found to have had no control over the vehicle, the trial judge's determination not to impute Mr. Cashen's negligence, as driver, to her was correct.

*Palmeno*, 627 P.2d at 166. In *Edwards*, 397 P.2d at 90, the Wyoming Supreme Court held that ownership alone does not form a basis for imputing negligence. The case makes clear that in deciding the propriety of giving an instruction on the impu-

tation of negligence, the passenger's giving of direction and suggestions as to the operation of the vehicle are factors to consider. Consistent with *Edwards*, *Porter* holds that the negligence of a husband who was driving a vehicle was not imputable to his wife who was a passenger in the vehicle, where the husband was in physical and actual possession of the vehicle, was driving as he desired without instruction or suggestion from anyone, and his wife, who owned the vehicle, had no actual control whatever over the vehicle.

■ In the instant case, contrary to the facts in *Porter*, there was evidence that the passenger initiated the "test-drive," encouraged the driver, Schade, to drive the Corvette faster than the speed limit, and wanted the driver to "see what the car [would] do." There is evidence that Schade may have been driving the car at a speed in excess of 100 miles per hour immediately prior to the accident. These actions create a question of fact for the jury whether Harvey legally controlled Schade's operation of the vehicle. We are not persuaded that the trial court abused its discretion in giving instruction No. 26 permitting the jury to impute Schade's negligence to Harvey.

**E. Blood-alcohol levels**

■ Harvey next argues the trial court erred in refusing to give his requested instruction on the presumptions governing blood-alcohol levels under Wyoming law. The instruction which Harvey tendered provided in part as follows:

> Defendant alleges that, at the time of the accident, Gregory Allen Harvey and Chris Schade were under the influence of alcoholic beverages. The defendant further alleges that Chris Schade was operating a motor vehicle under the influence of alcohol.
>
> In order to determine the degree of a person's intoxication, the law engages the following presumptions.
>
> If at the time a chemical analysis was performed, there was an amount of five one-hundredths of one percent (0.05%) or less of alcohol in a person's blood, it shall

be presumed that the person was not under the influence of alcohol.

The source of the proposed instruction is the provision of Wyoming statutory law commonly known as the "drunk-driving statute." In *Combined Ins. Co. of America v. Sinclair*, 584 P.2d 1034, 1047 (Wyo. 1978), the Wyoming Supreme Court held that the presumptions of the cited statute apply only to criminal actions. The trial court did not abuse its discretion in refusing to give Harvey's proposed instruction.

**F. Harvey's drinking and driving habits**

 Finally, as to negligence, Harvey argues that the trial court erroneously allowed testimony of Harvey's drinking and driving habits. By pretrial order, the court ruled that Harvey's driving habits were inadmissible, "except that defendant may introduce otherwise admissible evidence of Harvey's driving on the date of the accident in order to show a course of conduct." At trial, GM presented testimonial evidence that within two hours of the accident, Harvey drove 50 m.p.h. in a 25 m.p.h. residential zone. GM also presented evidence that on the date of the accident, Harvey began drinking alcoholic beverages at 10:30 in the morning, and that between 5:00 and 6:00 in the evening he appeared to be under the influence of alcohol. Almost one hour after the accident, Harvey's blood-alcohol level was .171 percent, and GM's expert testified that at the time of the accident, Harvey's blood-alcohol level was "very close to .192%." Harvey objected to the evidence on relevancy grounds. He now argues the trial court erred in admitting evidence of the passenger's pre-accident conduct. We are not persuaded by his argument.

To support his argument, Harvey cites *Meller v. Heil Co.*, 745 F.2d 1297 (10th Cir.), *cert. denied*, 467 U.S. 1206, 104 S.Ct. 2390, 81 L.Ed.2d 347 (1984), and *Shields v. Carnahan*, 744 P.2d 1115 (Wyo.1987). Both of these cases are easily distinguished from the case now before the court. *Meller* is a wrongful-death product-liability action against the manufacturer of a dump truck bed assembly for damages resulting from the death of plaintiff's husband while he performed routine maintenance on the truck. In *Meller* the trial court refused to permit defendant to elicit testimony that at the death scene police discovered two hashish pipes containing marijuana residue in the decedent's rucksack. Defendant sought to admit the hashish pipes, claiming that they were probative of the decedent's life expectancy and that they impeached the prior testimony of the plaintiff. The trial court excluded the pipes, concluding that their probative value was substantially outweighed by the danger of unfair prejudice under Fed.R.Evid. 403. We agreed, and observed that there was no medical foundation for the claim, the pipes were of questionable value as impeachment material, and it appeared that defendant sought to introduce the pipes for the specific purpose of arousing juror sentiment against the decedent. Contrary to the facts of the instant case, the facts of *Meller* demonstrate no nexus between the challenged evidence and the issues properly before the jury.

*Shields* is a medical-malpractice action. Plaintiff alleged that defendant failed to properly treat and advise her after she was injured in an automobile accident. At trial, the court permitted evidence that prior to the accident, plaintiff was on a late-night trip with a man who was not her husband. The Wyoming Supreme Court held that evidence regarding plaintiff's activities before the automobile accident was irrelevant to the issue of malpractice, and its admission prejudiced plaintiff. Unlike the instant case, the pre-accident "conduct" was totally unrelated to the issues in the lawsuit.

In our view, the trial court did not abuse its discretion in permitting the testimony of Harvey's reckless conduct prior to the rollover. Even as a passenger, Harvey had a duty to exercise reasonable care for his own safety. *Sanders v. Pitner*, 508 P.2d 602, 605 (Wyo.1973). Evidence of his recklessness, both as to excessive drinking and unsafe driving, was relevant to the question of Harvey's own negligent encouragement of and participation in this tragic escapade.

### III. Chevrolet Rollover Tests

■ Harvey asserts the trial court erred when it admitted into evidence a videotape of 1983 Chevrolet Malibu rollover tests. He argues that the out-of-court experiment was improperly admitted into evidence because it was not sufficiently similar to the accident at issue. After reviewing the record, we are not persuaded that the trial court abused its discretion in admitting the evidence.

During the testimony of one of GM's experts, Kenneth Orlowski, the trial court admitted a scientific study by Mr. Orlowski relating to general principles of occupant motion, or kinematics, in rollover accidents. The videotape was entitled "Rollover Crash Tests—The Influence of Roof Strength on Injury Mechanics." Mr. Orlowski's study involved a series of full-scale rollover crash tests conducted at the General Motors Proving Grounds using instrumented anthropomorphic dummies, without restraints, in 1983 Chevrolet Malibus. The film depicted a series of 1983 Chevrolet Malibu sedans on a "cradle" being pushed sideways down a track. The cars were "launched" when they reached the end of the track at a speed of 32 m.p.h. The high-speed photos show the roll sequence from various vantage points, and also the two front seat dummies from a camera mounted in the back seat.

The trial court ruled that the videotape of some of the scenes of the eight rollover tests was admissible for the limited purpose of showing "general principles of vehicle dynamics and occupant kinematics...." In so ruling, the court stated:

[T]his exhibit is admissible unless it is a misrepresentation or something that is passed off as a test of the Corvette itself and it's clear to the court that this isn't meant to duplicate or replicate the accident in the case.

. . . .

... I think that this video would assist the Court and jury in understanding the testimony of Mr. Orlowski as well as the general principles of vehicle dynamics and occupant kinematics as well as the pattern of injury mechanics and the occupant motion patterns.

Before permitting the jury to view the test film, the trial court cautioned the jury that the test film was not to be considered a re-creation of the Harvey accident. The court stated:

THE COURT: Members of the jury, there will now be displayed to you Defendant's Exhibit DD–2. In viewing this film, the Court has admitted it because it thinks that it would be helpful to you in understanding the oral testimony of Mr. Orlowski as well as the general principles of vehicle dynamics and occupant kinematics in patterns of injury mechanics to which Mr. Orlowski has testified.

"But let me point out to you and instruct you that this involves a Chevrolet Impala [sic] with a solid roof, not a 1978 T-top Corvette, and you are not to ignore the distinctions between this demonstrative evidence and the actual event that is the subject matter of this action. You must make allowances for the differences between the actual event and the demonstrative evidence."

The trial court could not have given a more clear limiting instruction.

Harvey relies on two cases to support his contention that the trial court erred in admitting the evidence: *Jackson v. Fletcher*, 647 F.2d 1020 (10th Cir.1981), and *Shipp v. General Motors Corp.*, 750 F.2d 418 (5th Cir.1985). Neither of these cases persuades us that the trial court abused its discretion in admitting the evidence. *Jackson* is a personal injury suit for damages sustained in an automobile which was demolished following a collision with a tractor-trailer driven by defendant and owned by his employer. In *Jackson*, we held that testimony based upon experiments conducted by defendants' experts should not have been admitted because the circumstances of the experiment were different from those of the actual accident. The *Jackson* holding, however, clearly is limited to experiments which purport to simulate actual events and to show the jury what presumably occurred at the scene of the accident. In *Jackson*, defendants' experts sought to disprove plaintiff's expert testimony that

the truck did not stop at the stop sign which faced it. The re-creation of the accident was conducted with a vehicle of a grossly different weight, a different engine size, and presumed facts some of which were in dispute at trial. In short, the "experiment" in *Jackson* was an enactment of defendant's theory of defense, presuming facts favorable to defendant. The "experiment" was introduced into evidence to disprove plaintiff's theory of liability. In the instant case, the experiment was conducted as an expert's research project independent of the case, and was introduced to assist the jury in understanding the expert's relevant testimony.

Furthermore, in *Jackson* we differentiated the circumstances surrounding our holding from those presented here:

> In our case the experiment was not primarily to demonstrate physical principles which can be demonstrated on some occasions without a suggestion arising that the experiment simulates actual events. *Millers' National Insurance Co., Chicago, Ill. v. Wichita Flour Mills Co.*, 257 F.2d 93 (10th Cir.1958); *Brandt v. French*, 638 F.2d 209 (10th Cir.1981). Where experiments such as this are not based on the facts, however, it must be made clear to the jury that the evidence is admitted for a limited purpose.... Where, however, an experiment purports to simulate actual events and to show the jury what presumably occurred at the scene of the accident, the party introducing the evidence has a burden of demonstrating substantial similarity of conditions. They may not be identical but they ought to be sufficiently similar so as to provide a fair comparison. *Barnes v. General Motors Corp.*, [547 F.2d 275, 277 (5th Cir.1977)].

*Id.* at 1027. In the instant case there is no question that the results of the experiment were not introduced to recreate the accident. Furthermore, the court gave a clear limiting instruction. *Jackson* does not apply to paint error in the instant case.

Likewise, *Shipp* does not apply to demonstrate the existence of error. In *Shipp* the trial court admitted into evidence plaintiff's exhibits demonstrating a drop test of a 1976 TransAm and excluded GM's film illustrating unrestrained occupant movement in a rollover accident. "The admission of such demonstrative evidence is within the trial court's sound discretion and will not be disturbed on appeal absent 'abuse.'" *Shipp*, 750 F.2d at 427. In *Shipp* the court did not perceive abuse in either the admission of plaintiff's evidence or the exclusion of defendant's evidence, noting that the trial court balanced defendant's evidence under Fed.R.Evid. 403 and determined that a limiting instruction would not defuse an improper influence of the evidence. The *Shipp* court further stated: "Rule 403 determinations are often inextricably bound with the facts of a particular case and thus will not be disturbed absent a showing of 'clear abuse.'" *Id.* at 427. Contrary to what Harvey argues, the disposition in *Shipp* does not apply herein to render the trial court's ruling abusive. Evidence properly excluded in one context is not automatically admitted erroneously in a separate context. In our view, the trial court in the instant case did not abuse its discretion in admitting the evidence to help the jury understand the expert testimony.

## IV. Damages

■ Harvey argues that the trial court abused its discretion in granting GM's Motion in Limine and thereby prohibiting Harvey from introducing into evidence a family photo of Harvey, his wife, and their child. At the time of the accident, Harvey was separated from his wife. At the time of trial, a divorce was pending. The suit contained no claim for loss of consortium or support. The trial court made the determination that the danger of prejudice outweighed the probative value of the proposed exhibit. For the same reasons set forth previously regarding balancing, we perceive no abuse of discretion in the trial court's ruling.

For the reasons stated herein, we hold the trial court did not err in ruling on the matters presented in this appeal.

AFFIRMED.