Richard CROSSLEY, a disabled adult, by his legal guardian Wesley CROSSLEY, Plaintiff-Appellant,

v.

GENERAL MOTORS CORPORATION, Defendant-Appellee.

No. 93-3951.

United States Court of Appeals, Seventh Circuit.

Argued May 18, 1994.

Decided Aug. 26, 1994.

Bernard R. Nevoral, Paul W. Pasche (argued), Nevoral & Associates, Chicago, IL, Louis F. Pignatelli, Pignatelli & Pignatelli, Rock Falls, IL, for plaintiff-appellant.

John T. Hickey, Jr., Alexander Dimitrief (argued), David A. Rammelt, Kirkland & Ellis, Chicago, IL, R. Michael Henderson, Quinn, Johnston, Henderson & Pretorius, Peoria, IL, for defendant-appellee.

Before WOOD, Jr., MANION, and ROVNER, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

After a one vehicle automobile accident in which Richard Crossley, the driver, was seriously injured, onlookers discovered that one of the axle shafts on his Chevrolet S–10 Blazer was fractured. Crossley sued General Motors, the manufacturer of the Blazer, seeking compensation for his injuries. The central question at trial in this diversity suit in which California law controlled was whether the axle fractured before the crash, constituting the cause of the accident, or as a result of the crash, which was caused by Crossley's negligence.

Three eyewitnesses testified that on July 23, 1988, Crossley was driving his 1987 Chevrolet S–10 Blazer on a banked, curved two-lane connector ramp linking two interstate freeways near Ontario, California, when he lost control of the Blazer. He was travelling at approximately 70 miles per hour in a 55 miles per hour zone, and was passing other vehicles on the curved connector ramp. Accident reconstructionists for both Crossley and General Motors placed Crossley's speed at or above 70 miles per hour at the time of the accident. Additionally, experts for both sides agreed that Crossley's tires were in poor condition: they were mismatched in both size and brand, worn, and had nails, screws, and plugs in them. All three eyewitnesses noticed generally that the tires looked substandard, and specifically that the left rear tire was low on air pressure.

One of the eyewitnesses noticed the left rear tire begin to buckle as Crossley veered in front of him to pass. Immediately thereafter, Crossley lost control and began to fishtail back and forth across both lanes of traffic. The Blazer rotated 360 degrees and flew off the side of the connector ramp passenger side first. During those moments, none of the eyewitnesses could recall witnessing signs of an axle shaft breaking—they did not notice the undercarriage of the Blazer contacting the ground, sparks flying, or the wheels detaching.

After the Blazer flew off of the connector, it sailed 40 to 50 feet in the air at approximately 60 miles per hour before hitting the ground. The eyewitnesses further noted that the initial point of impact upon landing was on the right rear tire of the Blazer. The vehicle then rolled over several times over a distance of 287 feet. Through the cloud of dust caused by the impact, one of the witnesses saw Crossley ejected from the Blazer 50 to 60 feet in the air. Crossley suffered a closed head injury, and as a result is a spastic quadriplegic.

Officer Trinidad Gonzales of the California Highway Patrol investigated the accident. He found the right rear wheel and axle stub resting ten feet from where the Blazer stopped. Officer Gonzales began inspecting the pavement on the highway where Crossley lost control for gouges, abrasions, or any other marks that would indicate that the tire came off while the Blazer was on the roadway. After 30 minutes of investigation, neither Officer Gonzales, who previously had investigated over 100 rollover accidents, nor Officer Ellen Conley, who assisted in investigating the accident, found any irregular marks on the highway.

As part of its defense, General Motors intended to call as a witness Kenneth Orlowski, an expert in assessing rollover accidents, to explain the dynamics of rollovers to the jury. To assist Orlowski in explaining those concepts to the jury, General Motors sought to introduce a videotape of a study of rollover sequences that involved a 1982 Malibu (the Malibu tape). Crossley objected to the presentation of the Malibu tape because it depicted a different model vehicle, the test was conducted in a controlled setting during which the automobile was propelled from a dolly at 31 miles per hour, and the road surfaces were different. The district court allowed General Motors to play the Malibu tape for the purpose of demonstrating "general scientific and engineering principles."

Crossley presented an entirely different picture of causation. Crossley contended that the axle shaft cracked before he lost control of his Blazer, and that the crack occurred because of a manufacturing defect for which he sought to hold General Motors strictly liable. Professor David Flebeck, Crossley's metallurgy expert, testified that General Motors was supposed to heat treat the axle so that the outer case had high hardness and the inner core was softer, or ductile. Flebeck further stated that the individual grains of metal in the axle of Crossley's Blazer were damaged during the hardening process, causing the outer case and inner core of the axle to become brittle. The brittle nature of the axle could cause the axle to fracture under even normal operating loads. Flebeck opined that the axle embrittlement caused Crossley to lose control of his vehicle and therefore caused his injuries. Professor Roland Ruhl, Crossley's accident reconstruction expert, concurred in Flebeck's assessment of what caused the accident, and added that there was no substantial damage

to the right rear quarter of the Blazer, as would be consistent with the vehicle hitting the ground with sufficient force to break the axle.

After having been exposed to both theories of causation, the jury deliberated and returned the following signed special verdict form:

Question No. 1: Was there a defect in manufacture of the product involved?

Answer: YES

Question No. 2: Did the defect exist when it left the possession of the defendant?

Answer: YES

Question No. 3: Was the defect a cause of injury to plaintiff?

Answer: NO

The district court therefore entered judgment on the verdict in favor of General Motors, and subsequently denied Crossley's post-trial motion for a new trial. Crossley now appeals from the judgment of the district court and its denial of his motion for a new trial.

### A. The Jury Verdict

▇▇▇ Crossley argues that the evidence presented at trial was insufficient to support the jury verdict against him, and therefore suggests that the district court erred in failing to grant his motion for a new trial. Appellate review of such a denial, however, is extremely limited. *Sokol Crystal Prods., Inc. v. DSC Communications Corp.*, 15 F.3d 1427, 1433 (7th Cir.1994). The decision whether to grant a new trial is committed to the discretion of the district court, and we therefore will not disturb that decision "except under exceptional circumstances showing a clear abuse of discretion." *General Foam Fabricators, Inc. v. Tenneco Chems., Inc.*, 695 F.2d 281, 288 (7th Cir.1982), *quoted in EEOC v. Century Broadcasting Corp.*, 957 F.2d 1446, 1460 (7th Cir.1992).

▇▇▇ We find no abuse of discretion in the decision of the district court not to grant a new trial. General Motors elicited the testimony of three eyewitnesses to the accident, a metallurgist, and an accident reconstructionist, among others, all of whom presented ample evidence suggesting that Crossley's

negligence caused his accident, not a cracked axle shaft. Crossley would have us reweigh all of the trial testimony based solely on the cold record, but we are not inclined to so cavalierly disregard the reasoned decision of twelve men and women who observed the demeanor of the witnesses and analyzed the evidence accordingly.

▇▇▇ Crossley also argues that the special verdict form reveals an inconsistency in the jury verdict. The supposed inconsistency is based on the jury concluding that there was a manufacturing defect in the Blazer, but that the defect did not cause Crossley's accident. Our duty is to attempt to reconcile an apparently inconsistent jury verdict, if doing so is possible. *Century Broadcasting Corp.*, 957 F.2d at 1460.

▇▇▇ Reconciling the jury verdict in this instance is an easy task. Causation clearly is a distinct element under California law, which controls in this diversity action. *Doupnik v. General Motors Corp.*, 225 Cal. App.3d 849, 859, 275 Cal.Rptr. 715, 720 (1990). The mere existence of a defect does not prove that the defect was responsible for subsequent injuries—if a person intentionally drives a defective Blazer off a cliff, the driver's estate cannot recover against General Motors because the vehicle in which the injuries occurred was defective. In this case, the jury concluded that although Crossley's Blazer was improperly manufactured, Crossley's negligence caused him to lose control of his vehicle and crash, and it was not until the impact of the crash that the already brittle axle broke. That assessment of events, whether accurate or not, certainly is internally consistent.

### B. The Malibu Tape

▇▇▇ Crossley also contends that the district court erred in admitting the Malibu tape as evidence during his trial. We review evidentiary rulings of trial judges for clear abuses of discretion. *Rodriguez v. Anderson*, 973 F.2d 550, 553 & n. 3 (7th Cir.1992). General Motors sought to show the jury a brief portion of the Malibu study videotape to help illustrate the testimony of Kenneth Orlowski, an expert in assessing

rollover accidents who testified regarding the complicated vehicular dynamics of rollover accidents. Given the limiting instruction issued by the district court, we see no error in admitting the Malibu tape, which Crossley's own expert witness acknowledged was part of "one of the most definitive testing programs [he had] ever seen or heard of."

The district court gave the issue of whether to allow the jury to view the Malibu tape extensive consideration. The court reviewed written briefs on the issue and heard oral arguments from the parties on five separate occasions. The court also viewed the Malibu tape and conducted a *voir dire* of Orlowski to determine how the tape pertained to Orlowski's opinions, and the court then allowed Crossley to conduct a *voir dire* of Orlowski as well. After considering all of the pertinent information, the court determined that "the evidence would be of a scientific study of experiments showing rollover vehicle dynamics, and it's not intended to replicate the accident here.... I think it will be helpful to the jury in this case to see the dynamics."

The district court did not, however, give General Motors free rein with regard to showing the jury the Malibu tape. Rather, the district court: 1) limited General Motors to one test of the three it sought to show the jury; 2) prohibited General Motors from stopping the tape during direct examination of Orlowski; 3) issued a five-paragraph limiting instruction and explicitly informed the jury that the tape was "not intended to be a reenactment of this accident or the cause of this accident;" 4) invited Crossley to play any portion of the Malibu tape during cross-examination, including any of the Malibu tests in which the rear axles did not break after rollovers; and 5) prohibited the tape from going to the jury at the close of the evidence. During the direct examination of Orlowski, Crossley did not object that Gener-

al Motors was in any manner exceeding the limiting instruction of the district court.

 Under *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261 (7th Cir.1988), the decision of the district court to admit the Malibu tape pursuant to its limiting instruction was well within its discretion. *Nachtsheim* held that " '[d]emonstrations of experiments used merely to illustrate the principles forming an expert opinion do not require strict adherence to the facts,' " and courts may admit such demonstrations so long as they are offered to illustrate scientific principles rather than as re-enactments. *Id.* at 1278, quoting *Brandt v. French*, 638 F.2d 209, 212 (10th Cir.1981). In fact, the Tenth Circuit has held that *the very same demonstrative evidence at issue here* was "admissible for the limited purpose of showing 'general principles of vehicle dynamics....' " *Harvey v. General Motors Corp.*, 873 F.2d 1343, 1355 (10th Cir.1989) (considering admissibility of the Malibu tape). Jurors are presumed to follow limiting instructions, *United States v. Beverly*, 913 F.2d 337, 354 (7th Cir.1990), *aff'd sub nom. Griffin v. United States*, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991) (addressing different issue), and the limiting instruction in this case was even more stringent than the one the Tenth Circuit approved in *Harvey*. *See Harvey*, 873 F.2d at 1355–56.

Although Crossley does cite many cases in which courts of appeal have upheld the exclusion of demonstrative evidence by trial courts, here we are considering the decision to admit, not exclude, evidence.[1] Whether district courts have excluded or admitted demonstrative evidence, courts of appeal have accorded substantial deference to those decisions. Crossley has presented no compelling reason to believe that the district court abused its discretion in admitting the Malibu tape, and in fact we believe that its approach was well reasoned and sound.[2]

---

1. Crossley does cite two cases in which courts of appeal have disturbed the evidentiary rulings of trial courts. *See Chase v. General Motors Corp.*, 856 F.2d 17 (4th Cir.1988); *Gladhill v. General Motors Corp.*, 743 F.2d 1049 (4th Cir.1984). In both cases, however, the tests illustrated elementary principles of physics rather than the complicated and sometimes counterintuitive aspects of

rollover dynamics, and we therefore conclude that both cases are distinguishable.

2. Crossley also complains that General Motors failed to timely disclose the Malibu tape. General Motors, however, disclosed the Malibu tape as a trial exhibit in the Pretrial Order months before trial. When the Pretrial Order was filed on July 21, 1993, Crossley failed to raise a timeliness

The judgment of the district court therefore is

AFFIRMED.

objection to the tape. The district court found
no discovery violations on the part of General
Motors, a finding in accord with the record.