FILED
United States Court of Appeals
Tenth Circuit

August 29, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

KIMBERLY ROMERO,

    Defendant - Appellant.

No. 17-2172
(D.C. No. 1:12-CR-00159-MCA-3)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **MATHESON**, **McKAY**, and **McHUGH**, Circuit Judges.

Defendant Kimberly Romero appeals the revocation of her supervised release for violation of its conditions. Reviewing the district court's decision under an abuse-of-discretion standard and its legal conclusions *de novo*, we affirm the ruling.

In January 2013, Defendant was convicted of possession and conspiracy to possess with intent to distribute methamphetamines. *See* 21 U.S.C. §§ 841(b)(1)(A), 846. She was sentenced to forty-six months in jail, followed by sixty months of supervised release beginning October 30, 2015. As a condition of her supervised release, Defendant was

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of this case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

prohibited from "commit[ting] another federal, state, or local crime." (Second Supp. R. at 17.)

In April 2017, Defendant's probation officer filed a petition for revocation of Defendant's supervised release based on allegations that Defendant had committed the crime of child abuse.[1] The alleged crime came to light on March 31, 2017, when a Catholic Charities day care requested an investigator from the New Mexico Children, Youth & Families Department to come and speak with Defendant's three-year-old son, who "had been allegedly beaten with a belt." (R. at 135.) The day care also contacted the Bernalillo County Sheriff's Department, which dispatched an officer to the scene. Child care staff members discovered the boy's injuries—"extensive patterned bruising involving the buttocks, thighs and left forearm as well as additional bruises to the back"—when helping him go to the bathroom that afternoon. (First Supp. R. at 17.) Upon arrival, the CYFD investigator examined the child's bruises, including some that appeared to have been inflicted by the belt buckle. During a one-on-one interview, the child told the investigator that "Daddy[2] did this," "Daddy hurt me," and "Daddy gave me owees," but made no statements about physical abuse from his mother. (R. at 137.)

---

[1] Defendant was charged in New Mexico State Court with (1) abandonment or abuse of a child resulting in great bodily harm contrary to N.M. Stat. Ann. § 30-6-1-(D), and (2) conspiracy contrary to N.M. Stat. Ann.§ 30-28-2, based upon conduct described in an arrest warrant affidavit accompanying the criminal complaint. Though this criminal complaint was not attached to the petition for revocation and was later dismissed without prejudice, the district court determined that the petition's inclusion of a "violation report" provided Defendant with sufficient notice as to the "specific acts or omissions underlying the alleged unlawful conduct." (R. at 68.) Defendant does not appeal this determination.

[2] The child, who has no contact with his biological father, refers to his mother's boyfriend, Cain Suarez, as "Dad" or "Daddy." (*See* R. at 171.)

When Defendant arrived to pick up her son, she initially told the officer that she was responsible for her son's injuries. She later explained that she had asked her boyfriend, Cain Suarez, to help discipline her son because he had been misbehaving at school and Mr. Suarez had previously told Defendant that she "babied" her son too much. (R. at 149.) According to the CYFD investigator, Defendant said that Mr. Suarez had taken the child upstairs while she remained downstairs in the kitchen. She stated that she heard Mr. Suarez ask the child what had happened at school that day, but could not hear her son's response. She then heard what she believed to be the sound of a belt being removed from pants, followed by the sound of five spanks. Defendant then went upstairs, where she saw her son with his pants down and Mr. Suarez with a belt in hand. Due to her "shock" at what she was seeing, she observed two additional spanks before she intervened. (R. at 140.) Defendant told the officer that Mr. Suarez "bec[a]me very confrontational" and complained that she had "ask[ed] him to help discipline and then contradict[e]d his form of discipline." (R. at 206.) Defendant packed her things and left Mr. Suarez's home with her son, arriving at her mother's house late that evening.

Following these conversations at the day care center, Defendant and the investigator briefly stopped at Defendant's mother's home before taking the child to the emergency room at the University of New Mexico Hospital Pediatrics Department for an examination. There was initially concern about a possible healing fracture in the boy's left arm, but this was ruled out following further examination. Based on her interviews and the exam, the CYFD investigator created a safety plan describing the events, Defendant's lack of proper response, and other safety concerns, including "reported

3

issues with domestic violence in the home between [Mr. Suarez] and [Defendant]." (First Supp. R. at 55.)

The CYFD investigation also revealed a handful of alleged prior events concerning Defendant's son which had led to "unsubstantiated" claims of abuse. On September 24, 2016, the child had allegedly stated that "Daddy did it," when day care staff asked about some bruising on his cheek and a possible bite mark. (R. at 171.) Then, on November 27, 2016, the child again told day care staff members that "Daddy" had given him the scratches on his cheek. (R. at 172.) The boy gave the same answer—"Dad did it"—when asked about "what appeared to be bruis[ing] and infect[ion]" on three of his fingers in January 2017. (R. at 172-73.) When CYFD looked into these reports in January 2017, the department made contact with Defendant and her son, who was "very non-verbal" due to his young age. (R. at 173-74.) Because of this, "the investigator based the judgment [that the claims could not be substantiated] mainly on statements from [Defendant], at which point the perpetrator was not identified. It was said to be an unknown father or unknown boyfriend." (Id.) During her testimony, the CYFD investigator explained that "unsubstantiation" just means that CYFD "can't prove one way or the other what happened," which is common for cases with very young children who are "very limited in what they can say or what they know how to say." (R. at 174.) "If the child can't tell [the CYFD investigator] what happened, themselves, [CYFD] can only base [its conclusions] off of statements made by the parents," as it did in Defendant's son's case in January 2017. (Id.)

On June 16, 2017, Defendant filed a motion to dismiss the revocation proceedings and to reinstate her term of supervised release. On July 11, 2017, the court held an evidentiary hearing on the petition and on the motion to dismiss. After hearing testimony from the CYFD investigator, responding officer, and probation officer, the court was unable to reach a decision and held another evidentiary hearing on August 10, 2017. At this second hearing, the judge explained that she was inclined to grant the motion to dismiss, but wanted to hear what the parties had to say. During the course of the hearing, the government focused heavily on the argument that Defendant had committed criminal negligence because the three unsubstantiated CYFD reports at the very least put Defendant on notice that she should not leave her son alone with Mr. Suarez. The government also placed heavy emphasis on the fact that Defendant had not taken the child to a hospital, had not told her mother, had not called her probation officer, and had not called CYFD about the incident. By the end of the hearing, the judge explained that she would need more time to reach a decision in light of the things she had heard at the hearing.

At a third hearing on August 25, 2017, the court entered an opinion finding that Defendant had violated New Mexico's child abuse statute, N.M. Stat. Ann. § 30-6-1(D). In so finding, the judge placed a great deal of weight on the fact that Defendant had entrusted her child to her boyfriend when that same child had stated this man had hurt him on at least three prior occasions. Although CYFD had not been able to substantiate those reports, the judge said that this did not matter in light of the child's "tender age." (R. at 296.) The judge further determined that Defendant not only failed to take action to

5

stop the punishment before it happened, but did not protect her son once she heard the belt strikes—all of which contributed to the negligent child abuse. The district court found Defendant had violated the condition of her supervised release and sentenced her to ten months in prison and another term of supervised release of forty-eight months. Defendant now appeals.

We review revocation of a defendant's supervised release for abuse of discretion. *United States v. LeCompte*, 800 F.3d 1209, 1215 (10th Cir. 2015). We review the district court's legal conclusions de novo. *Id.* To revoke a term of supervised release, a district court must find by a preponderance of the evidence that a defendant violated a condition of that release. *See* 18 U.S.C. § 3583(e)(3); *United States v. Disney*, 253 F.3d 1211, 1212-13 (10th Cir. 2001). A preponderance of the evidence means that the evidence, considered in light of all the facts, proves that something is more likely so than not. *Harvey v. General Motors Corp.*, 873 F.2d 1343, 1349 n.2 (10th Cir. 1989).

Here, the government has alleged that Defendant violated New Mexico statute § 30-6-1(D), which provides as follows:

> D. Abuse of a child consists of a person knowingly, intentionally or negligently, and without justifiable cause, causing or permitting a child to be:
>
> > (1) placed in a situation that may endanger the child's life or health; [or]
> > (2) tortured . . . or cruelly punished[.]

New Mexico statute § 30-6-1(A)(3) further provides:

> > (3) "negligently" refers to criminal negligence and means that a person knew or should have known of the danger involved and acted with a reckless disregard for the safety or health of the child.

6

Thus, the key issue in determining whether Defendant violated a condition of her supervised release comes down to this: whether a preponderance of the evidence proved it was more likely than not that she knew or should have known that allowing Mr. Suarez to discipline her son would place the child in a situation that could endanger his health and safety or permit him to be cruelly punished. After three evidentiary hearings and extensive deliberation, the district court concluded that it did.

Based on a review of New Mexico child abuse case law and the available facts, the district court "infer[red] that Defendant knew that [Mr.] Suarez had physically abused Child on more than one occasion prior to this incident." (R. at 72 [*citing State v. Leal*, 723 P.2d 977, 981 (N.M. Ct. App. 1986) (indicating that where the defendant has knowledge of past abuse, it may be permissible to infer that she understood the risk of further abuse associated with leaving the child alone with the abuser), *abrogated on other grounds by Santillanes v. State*, 849 P.2d 358 (N.M. S. Ct. 1993)].) The court further made the inference that "when Defendant asked [Mr.] Suarez to help discipline the child, . . . Defendant understood that [Mr.] Suarez's method of 'discipline' would likely involve physical punishment." (R. at 72 [*citing State v. Kuykendall*, 2014 WL 5782937, at \*1-4 (N.M. Ct. App. 2014) (holding that the defendant's act of leaving a child alone with her boyfriend notwithstanding his history of abusing the child supported a conviction for permitting child abuse)]. The court ultimately concluded:

> Defendant was put on notice of Suarez' potential for abusive behavior. Nevertheless, she permitted Suarez to take Child upstairs to be "disciplined" while she remained downstairs, and she continued to remain downstairs even though she heard Suarez remove his belt and strike Child with it five or six times. In other words, Defendant not only failed to take

7

any action to abate the prospective punishment *before* it occurred—for example by asking Suarez to "discipline" Child in her presence, by appropriate means, or by instructing him to refrain from physical discipline, but she also failed to take action once the abuse started—choosing instead to passively permit Child to be stricken with a belt seven or eight times. (R. at 72-73.)

After our own careful review of the record, the law, and the district court's reasoning, we affirm this ruling. Given that Defendant had conversed with a CYFD investigator about her son's prior injuries and the boy's statements that "Daddy did it," we concur with the district court's inference that the Defendant was on notice of Mr. Suarez's potential for abusive behavior. Mr. Suarez had already criticized Defendant for "babying" the child, suggesting his belief that there should be some type of escalation in punishment for misbehavior, which foreseeably could lead to physical abuse. These circumstances, coupled with the fact that Mr. Suarez had some history of violence toward Defendant herself, should have given Defendant pause in asking for Mr. Suarez's help with discipline and in allowing him to go upstairs with her son while she remained in the kitchen because she knew or should have known her son might be at risk of harm from Mr. Suarez. *See State v. Nichols*, 363 P.3d 1187, 1193 (N.M. S. Ct. 2016) (determining that the New Mexico legislature drafted § 30-6-1(D) so that "both active and passive abusers [who permit child abuse] would be held equally responsible."). We concur with the district court's legal and factual determinations that there is sufficient evidence to conclude that Defendant's actions more likely than not constituted a violation of N.M. Stat. Ann. § 30-6-1(D) and, therefore, that Defendant violated a condition of her supervised release.

8

We accordingly **AFFIRM.**

ENTERED FOR THE COURT


Monroe G. McKay
Circuit Judge