**A.E., By and Through her next friends, Daniel and Margaret EVANS, Plaintiff–Appellant,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 25, OF ADAIR COUNTY, OKLAHOMA, a/k/a Stilwell Public Schools, Defendant–Appellee.**

No. 90–7018.

United States Court of Appeals, Tenth Circuit.

June 10, 1991.

473

Before BALDOCK and BRORBY, Circuit Judges, and FINESILVER, District Judge.[1]

SHERMAN G. FINESILVER, Chief District Judge.

This case is an appeal by plaintiff A.E., by and through her parents, Daniel and Margaret Evans, under Public Law 94–142, the Education for All Handicapped Children's Act, codified at 20 U.S.C. § 1400, *et seq.* The Evanses seek to have their daughter classified as seriously emotionally disturbed, and thereby entitled to benefits under the Act. The trial court upheld the hearing officer's determination that A.E. is not seriously emotionally disturbed. Appellant challenges this decision. The issues presented on appeal are: (a) whether Congress intended to exclude children who were socially maladjusted, but not seriously emotionally disturbed, from coverage under the Act; (b) whether A.E. is seriously emotionally disturbed; and (c) whether the trial court improperly admitted and considered the expert testimony of Dr. Bevan Todd Graybill, an expert in child psychology. For the reasons stated below, we affirm the decision of the trial court.

I.

The material facts in the case are not in dispute. A.E. is a minor child, who was born on September 25, 1973. She is a student in the Stilwell, Oklahoma, Public Schools. It is agreed that A.E. is learning disabled in math. She has also experienced problems with peer interaction, impulse control, and excessive anxiety while in school. In November 1987, she was suspended from school for theft, fighting, tardiness, smoking, disruptions of class, and use of improper language. The school determined that these behavioral problems were not related to her learning disability. In reaction to news of the suspension, A.E. made a suicidal gesture by cutting herself on the arm with a broken bottle.

Louis D. Bullock (Patricia W. Bullock, with him on the brief) of Bullock and Bullock, Tulsa, Okl., for plaintiff-appellant.

Gene L. Mortensen of Rosenstein, Fist and Ringold, Tulsa, Okl., for defendant-appellee.

1. The Honorable Sherman G. Finesilver, Chief United States District Judge for the District of Colorado, sitting by designation.

A.E. was admitted to the Children's Medical Center psychiatric unit on December 17, 1987. She was diagnosed as having a conduct disorder related to emotional problems and a borderline personality disorder. Her psychologist recommended that she remain in a homebased program until the fall, when she could be placed in a class for seriously emotionally disturbed students and then slowly returned to regular classes. A.E. was discharged from the Children's Medical Center on April 25, 1988.

In the fall of that year, the parents of A.E. requested that the school district develop an Individualized Education Plan (IEP) for A.E., and classify her as seriously emotionally disturbed rather than merely learning disabled.[2] The IEP team determined that A.E. was categorically not covered by the Act. The team concluded that A.E.'s behavioral problems were not related to her learning disability. Further, the team refused to classify her as seriously emotionally disturbed.[3] Although the team determined that A.E. was not handicapped within the scope of the Act, an IEP was prepared to assist A.E.'s progress in a mainstream classroom.

After receiving notification of this determination, the Evanses requested a due process hearing. The hearing was held on September 15, 1988. The Hearing Officer concluded that A.E. was not emotionally disturbed, but was properly categorized as learning disabled with a deficiency in mathematics. The Hearing Officer noted the difficulties faced by the parents in representing themselves at the hearing. The Hearing Decision was appealed on November 25, 1988. The Appeal Officer agreed that A.E. was not seriously emotionally disturbed. The United States District Court for the Eastern District of Oklahoma affirmed. At issue is whether seriously emotionally disturbed children who are diagnosed as having a conduct disorder are properly excluded from the coverage of Public Law 94–142 by the language in 34 C.F.R. § 300.5(b)(8).

## II.

Under Public Law 94–142, the public school system must provide a free and appropriate education to all handicapped children. *See Honig v. Doe,* 484 U.S. 305, 309, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); *Johnson v. Independent School Dist. No. 4,* 921 F.2d 1022, 1026 (10th Cir.1990), *cert. den.,* — U.S. —, 111 S.Ct. 1685, 114 L.Ed.2d 79 (1991); *Timothy W. v. Rochester, N.H., School Dist.,* 875 F.2d 954, 959–60 (1st Cir.), *cert. den.,* — U.S. —, 110 S.Ct. 519, 107 L.Ed.2d 520 (1989); *Wexler v. Westfield Bd. of Educ.,* 784 F.2d 176, 178 (3d Cir.), *cert. den.,* 479 U.S. 825, 107 S.Ct. 99, 93 L.Ed.2d 49 (1986); *Cain v. Yukon Public Schools, Dist. I–27,* 775 F.2d 15, 16 (10th Cir.1985); *School Bd. v. Malone,* 762 F.2d 1210, 1213 (4th Cir.1985); *Kaelin v. Grubbs,* 682 F.2d 595, 596 (6th Cir.1982);

---

**2.** An IEP is an individualized education program developed annually by a team of professionals, including teachers and therapists who have contact with the child, and school district special education administrators, in consultation with the child's parents. The IEP specifies the desired goals for the child, the means of reaching those goals, and the method of evaluation. *Johnson v. Independent School Dist. No. 4,* 921 F.2d 1022, 1026 (10th Cir.1990), *cert. den.,* — U.S. —, 111 S.Ct. 1685, 114 L.Ed.2d 79 (1991).

**3.** Seriously Emotionally Disturbed is defined as follows:

I. The term means a condition exhibiting one or more of the following characteristics over a long period of time and to a marked degree, which adversely affects educational performance:

(a) An inability to learn which cannot be explained by intellectual, sensory or health factors;

(b) An inability to build or maintain satisfactory interpersonal relationships with peers or teachers;

(c) Inappropriate types of behavior or feelings under normal circumstances;

(d) A general pervasive mood of unhappiness or depression; or

(e) A tendency to develop physical symptoms or fears associated with personal or school problems.

II. The term includes children who are schizophrenic. The term does not include children who are socially mal-adjusted, unless it is determined that they are seriously emotionally disturbed.

34 C.F.R. § 300.5(b)(8). The state of Oklahoma has adopted this federal definition.

*Kruelle v. New Castle County School Dist.,* 642 F.2d 687, 690 (3d Cir.1981); *Carroll v. Capalbo,* 563 F.Supp. 1053, 1056 (D.R.I.1983). Handicapped children are those children who are "... mentally retarded, hard of hearing, deaf, speech impaired, visually handicapped, seriously emotionally disturbed, orthopedically impaired, or other health impaired children, or children with specific learning disabilities who by reason thereof require special education and related services." 20 U.S.C. § 1401(a)(1). *See Marvin H. v. Austin Independent School Dist.,* 714 F.2d 1348, 1354 n. 9 (5th Cir.1983). It is not the goal of the Act to provide the best conceivable education for each child in terms of maximizing that child's potential. Rather, the Act was designed to furnish to each child the basic opportunity for an individually structured education. *Gregory K. v. Longview School Dist.,* 811 F.2d 1307, 1314 (9th Cir. 1987).[4] The Act encourages placement of each child in the least restrictive environment possible. *Honig,* 484 U.S. at 311, 108 S.Ct. at 597–98; *Kruelle,* 642 F.2d at 695; *Malone,* 762 F.2d at 1213; *North v. District of Columbia Bd. of Educ.,* 471 F.Supp. 136, 139 n. 4 (D.D.C.1979); *Mills v. Board of Educ.,* 348 F.Supp. 866, 880 (D.D. C.1972). *See also* S.Rep. No. 168, 94th Cong., 1st Sess. 33, reprinted in 1975 U.S. Code Cong. & Admin.News 1425, 1457.

■ In evaluating compliance with the Act, the appellate court is to "... make 'independent decision[s] based on a preponderance of the evidence.'" *Board of Educ. v. Rowley,* 458 U.S. 176, 205, 102 S.Ct. 3034, 3050, 73 L.Ed.2d 690 (1982); 20 U.S.C. § 1415(e)(2). Appellate review must include "... *de novo* factual analysis based on that administrative record, as well as *de novo* legal analysis of the issues presented." *Johnson,* 921 F.2d at 1026. Two determinations must be made. First, have the procedures outlined in the Act been followed. "[A]dequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in

an IEP." *Id.* at 206, 102 S.Ct. at 3050. Second, is the IEP developed through the procedures reasonably calculated to enable the child to receive educational benefits. *Id.* at 207, 102 S.Ct. at 3051. *See Johnson,* 921 F.2d at 1026; *Cain,* 775 F.2d at 19. In answering these questions, due weight must be given to the expertise of school officials responsible for the child's education. *McKenzie v. Smith,* 771 F.2d 1527, 1531 (D.C.Cir.1985). *See* generally, *Gregory K.,* 811 F.2d at 1311; *McNair v. Cardimone,* 676 F.Supp. 1361, 1363 (S.D.Ohio 1987), *aff'd,* 872 F.2d 153 (6th Cir.1989). The burden of proof rests upon the party attacking the child's IEP. *Johnson,* 921 F.2d at 1026.

■ Appellant does not contend that the procedures outlined in the Act were disregarded. Rather, the determination that A.E. is not seriously emotionally disturbed is challenged. Seriously emotionally disturbed children are clearly included within the Education for All Handicapped Children Act. 20 U.S.C. § 1401(a)(1); *Clevenger v. Oak Ridge School Bd.,* 744 F.2d 514, 515 (6th Cir.1984). *See North,* 471 F.Supp. at 140–42; *Mills,* 348 F.Supp. 866. The Supreme Court has noted:

> Among the most poorly served of disabled students were emotionally disturbed children: Congressional statistics revealed that for the school year immediately preceding passage of the Act, the educational needs of 82 percent of all children with emotional disabilities went unmet.

*Honig,* 484 U.S. at 309, 108 S.Ct. at 596–97.

The legislative history confirms this proposition.

> This program is designed to assist state and local educational agencies in improving the education and training of severely handicapped children and youth, ....
> In general, this group of children includes those who are classified as seriously emotionally disturbed, autistic, profoundly and severely mentally retarded,

---

4. The stated purpose of the Act was to assure all handicapped children "... a free appropriate public education which emphasizes special edu-

cation and related services designed to meet their unique needs...." 20 U.S.C. § 1400(c).

and those with multiple handicapping conditions.

*Education of the Handicapped Act Amendments of 1983: Report of Mr. Hatch to Accompany S. 1341, Comm. on Labor and Human Resources,* S.Rep. No. 191, 98th Congress, 1st Sess. 7 (1983); *See also* S.Rep. No. 168, 94th Cong., 1st Sess. 8, reprinted in 1975 U.S.Code Cong. & Admin.News 1425, 1432 Table I (During 1974–75 only 230,000 of 1,310,000 emotionally disturbed children received educational services).

In drafting Public Law 94–142, Congress was concerned with the emotional trauma and educational difficulties inherent in misclassification of children as handicapped or not handicapped. *See* S.Rep. No. 168, 94th Cong., 1st Sess., reprinted in 1975 U.S.Code Cong. & Admin.News 1425. For that reason, Congress attempted to develop concise definitional regulations and a due process procedure that would allow review of any classification decision. *See* generally, 121 Cong.Rec. 246 (1975) (statement of Sen. Williams). The school district does not dispute that A.E. is properly classified as learning disabled in math; however, the district declined to reclassify A.E. based on the definition of seriously emotionally disturbed found in 34 C.F.R. § 300.5(b)(8). The language of 34 C.F.R. § 300.5(b)(8) excludes children who are socially maladjusted from coverage under the Act, unless they are also seriously emotionally disturbed. That a child is socially maladjusted is not by itself conclusive evidence that he or she is seriously emotionally disturbed. The evidence before us clearly supports the trial court's decision that A.E. was not seriously emotionally disturbed within the purview of the Act. In reviewing the district court decision, we find no error of law or unsupportable findings of fact. The testimony supports the finding that A.E. suffered from a conduct disorder, but was not seriously emotionally disturbed within the federal definition. There is no evidence of bad faith on the part of the Stilwell Public Schools. Although A.E.'s IEP team refused to reclassify her as seriously emotionally disturbed, the team did prepare an IEP designed to combat her learning disability and behavioral problems. The school district has made every effort to assure that A.E. can be educated in the least restrictive environment possible.

## III.

■ Appellant also challenges the testimony of Dr. Bevan Todd Graybill, an expert in child psychology. Appellant contends that the trial court improperly allowed Dr. Graybill to state legal conclusions based on his interpretation of the governing law. Fed.R.Evid. 704(a) allows an expert witness to testify in the form of an opinion or inference even if that opinion or inference embraces an ultimate issue to be determined by the trier of fact. *See Karns v. Emerson Elec. Co.,* 817 F.2d 1452, 1459 (10th Cir.1987); *United Telecommunications, Inc. v. American Television and Communications Corp.,* 536 F.2d 1310, 1318 n. 6 (10th Cir.1976); *Bosse v. Ideco Div. of Dresser Indus., Inc.,* 412 F.2d 567, 570 (10th Cir.1969). However, an expert may not state legal conclusions drawn by applying the law to the facts. *United States v. Jensen,* 608 F.2d 1349, 1356 (10th Cir.1979); *Frase v. Henry,* 444 F.2d 1228, 1231 (10th Cir.1971). An expert may, however, refer to the law in expressing his or her opinion. *Specht v. Jensen,* 853 F.2d 805, 809 (10th Cir.1988). "[Q]uestions of law are the subject of the court's instructions and not the subject of expert testimony." *United States v. Vreeken,* 803 F.2d 1085, 1091 (10th Cir.1986), *cert. den.,* 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987). A district court's admission of expert testimony is reviewed for an abuse of discretion. *Karns,* 817 F.2d at 1459; *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.,* 738 F.2d 1509, 1523 (10th Cir.1984), *aff'd,* 472 U.S. 585, 105 S.Ct. 2847, 86 L.Ed.2d 467 (1985). In order for an error of this nature to be reversible, the error must affect substantial rights and must result in actual prejudice. Error which does not rise to this magnitude is harmless. *Vreeken,* 803 F.2d at 1090.

■ Dr. Graybill was called as a witness for the plaintiff. Dr. Graybill has been

employed by numerous school districts to evaluate students for serious emotional disturbance and evaluated A.E. on behalf of the school district. *See* Record on Appeal, Volume II, Transcript of Proceedings, page 183. He diagnosed A.E. as having a conduct disorder with related emotional disturbance. Record on Appeal, Volume II, Transcript of Proceedings, page 182. The challenged testimony arose due to confusion over the psychological, lay, and legal definitions of the terms used in the federal regulation. While Dr. Graybill admitted that A.E. had emotional problems, he did not feel that her problems were of such a magnitude as to meet the federal definition of seriously emotionally disturbed. On redirect, he was directly asked whether A.E. fit within the definitions of the Act. Record on Appeal, Volume II, Transcript of Proceedings, page 209.[5] Plaintiff–Appellant now seeks to challenge the testimony. Any error was invited by the questioning and is harmless.

Accordingly, the Judgment of the district court in favor of Defendant–Appellee Stilwell Public Schools is AFFIRMED.

---

**5.** Q. When you say that because she's socially maladjusted that she doesn't get—that she's excluded from the law, I take it that where (sic) talking about is that part of the regulation, of the federal regulation there which is under Roman Numeral II; am I not correct?

A. Yes, sir.

Q. Okay. Let me read that to you and ask you if, in fact, that doesn't leave [A.E.] covered by the act.

"The term does not include children who are socially maladjusted unless it is determined that they are seriously emotionally disturbed."

Okay? Correct?

A. That's a correct reading of this, yes.

Q. All right. Now, have you not just told me that this girl is seriously socially maladjusted and seriously emotionally disturbed?

A. I was not speaking of seriously emotionally disturbed as it is used in this sentence.

Q. Right. Now, you're giving it a different twist, though, when you switch over to the law?

A. Right. Because seriously emotionally disturbed is in quotations and means something different than you and I were talking about. Record on Appeal, Volume II, Transcript of Proceedings, pages 209–10.