# UNITED STATES COURT OF APPEALS

# FOR THE TENTH CIRCUIT

MARK J. ZWERIN,

    Plaintiff-Counter-Defendant-Appellant,

    v.

MACCABEES MUTUAL LIFE INSURANCE COMPANY,

    Defendant-Appellee,

NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY,

    Defendant-Counter-Claimant-Appellee.

No. 96-8002

## ORDER

Filed July 3, 1997

Before **ANDERSON, McWILLIAMS**, and **BRISCOE**, Circuit Judges.

This matter is before the court on appellant's petition for rehearing. The petition is

denied. The order and judgment entered on April 21, 1997, is modified, however, to

delete the last sentence in the first full paragraph on page 11.  The modified order and judgment is attached.

Entered for the Court
PATRICK FISHER, Clerk of Court


by:
Deputy Clerk

2

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 21 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

MARK J. ZWERIN,

    Plaintiff-Counter-Defendant-
Appellant,

    v.

MACCABEES MUTUAL LIFE
INSURANCE COMPANY,

    Defendant-Appellee,

NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY,

    Defendant-Counter-Claimant-
Appellee.

No. 96-8002
(D.C. No. 94-CV-90-B)
(D. Wyo.)

ORDER AND JUDGMENT[*]

Before ANDERSON, McWILLIAMS, and BRISCOE, Circuit Judges.

    Plaintiff Mark Zwerin brought this insurance bad faith action against defendants

Maccabees Mutual Life Insurance Company (Maccabees) and Northwestern Mutual Life

Insurance Company (Northwestern) based on the insurers' decisions to stop paying him

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

disability benefits.  Relying on theories of fraud and mistake, Northwestern counterclaimed for restitution of benefits paid and life insurance premiums it had waived between 1985 and 1993.  Maccabees did not file a counterclaim.  The jury found against Zwerin on all claims and awarded Northwestern restitution on all benefits paid, including waived premiums, for a total amount of $971,299.10.  The district court later awarded prejudgment interest, which increased the judgment to $1,349,067.43.

I.

Zwerin purchased one disability insurance policy from Maccabees and two disability policies from Northwestern in 1982 while operating Spaulding Pharmacy in Inglewood, California.  In early 1983, Zwerin also purchased six life insurance policies from Northwestern.  The disability and life insurance policies contained clauses which waived premiums if Zwerin became disabled as a pharmacist.  The disability policies contained incontestability clauses stating the policies could only be rescinded during the first two years following the application dates for misrepresentations in the applications.

Zwerin's pharmacy was initially successful, but profits dropped precipitously from 1981 to 1983.  In addition, the pharmacy was robbed five times between 1978 and 1983, and Zwerin constructed a bulletproof glass work area in the store.  Zwerin moved to Palm Springs, California, in 1984.  As the commute to the pharmacy was approximately two hours, he started working only two to three days each week.

Zwerin filed his preliminary notice of disability with Northwestern on January 9, 1985, based on his alleged inability to stand because of artery blockage.  In his application, which was supported by the medical opinion of Dr. Lowell Augustine,

Zwerin did not assert any precipitating event leading to his disability, and he claimed he normally worked 50 hours per week. His notice of disability was filed shortly after the incontestability period on the Northwestern policies had expired. In March 1985, Zwerin submitted to Northwestern a signed request for disability benefits. Northwestern began paying Zwerin disability benefits in 1985, and also began waiving premiums on the life insurance policies. Maccabees began paying Zwerin benefits under its disability policy soon thereafter. By the time Zwerin's benefits were stopped in 1993, he was receiving benefits from both companies totaling about $10,000 per month.

Zwerin was required to submit monthly physician's verifications of disability. In February 1985, Dr. M. Williams reported Zwerin was disabled because of occlusive arterial disease and he projected a recovery period of three to six months. Zwerin's March request for benefits reported pain in standing and lower back and thigh pain. Dr. Augustine's report in April stated Zwerin was disabled because he could not stand, sit, or bend. In June, Dr. Orlando Pile found Zwerin disabled due to occlusive artery disease and osteoarthritis in the lumbar spine, with severe leg, back, and thigh pain.

In October 1985, Maccabees had Zwerin evaluated by Dr. Leon Levine, who determined Zwerin was not disabled. Zwerin sold his pharmacy in October 1985. In November 1985, Zwerin was denied social security disability benefits on his claim of having disabling varicose veins, although the agency noted, "We realize that your condition does prevent you from performing your job as a Pharmacist." Append. I at 141. In February 1986, on Zwerin's motion for reconsideration of social security disability benefits, the agency found he could work as a pharmacist.

By April 1986, Dr. Pile had added headaches and dizziness to the problems causing Zwerin's disability and he changed the projected recovery period to "indefinite." In June 1986, Dr. Raymond Baddour found Zwerin "apparently is unable to remain standing for more than 1 hour." Append. I at 161. At Maccabee's request, Dr. Lee Woolf and Dr. G. Stedman Huard examined Zwerin in October 1988. Dr. Woolf determined Dr. Augustine had not prepared an objective medical report and based his findings on Zwerin's subjective allegations. Dr. Woolf found Zwerin to be neither totally nor partially disabled. Dr. Huard found no evidence of vascular disease and found no clinical evidence of any disability. Following these reports, Dr. Pile began citing as causes of disability a torn ligament in Zwerin's knee, paranoia as a result of the robberies, and injuries from being kicked in the back during one of the robberies.

Maccabees terminated Zwerin's benefits in February 1989. Zwerin protested and procured the medical opinion of Dr. Antoine Roberts in March 1989, who concurred with previous diagnoses of total disability, and Maccabees reinstated the benefits.

By June 1989, Dr. Pile's reports omitted any reference to "painful varicosities" and cited back spasms from standing, headaches, and dizziness, and predicted Zwerin would not recover. In a letter dated October 16, 1989, Dr. Pile stated that despite an earlier diagnosis, there was no evidence of vascular disease. However, he noted that Zwerin still had lumbar sacral spinal strain and left knee strain.

Northwestern reviewed the medical reports in January 1991 and determined the circumstances surrounding Zwerin's disability were confusing and that it was "unclear as to both the cause and the degree of Mr. Zwerin's disability." Append. I at 206. In March 1991, Northwestern sent an investigator to interview Zwerin. Zwerin told the investigator

he could only walk two blocks at a time, he had difficulty driving, he could stand for only twenty minutes, and he could not lift appreciable weight. At Northwestern's request, Dr. Leonard Kalfuss examined Zwerin in June 1991 and found him not to be disabled. In August 1991, Dr. R. Randolph Powell reviewed Dr. Kalfuss' findings and determined they were extremely thorough but that questions remained.

Zwerin moved to Jackson, Wyoming, in November 1991 and interviewed doctors to be sure they would go along with his disability. He eventually started seeing Dr. Peter Rork, a well-respected orthopedic surgeon, who reported to Northwestern in September 1992 that Zwerin was totally disabled. In January 1993, Dr. Rork identified the possibility of post-traumatic stress syndrome as a basis for the continuing disability. In February 1993, Maccabees showed Dr. Rork a surveillance video of Zwerin involved in strenuous physical activity. After viewing the video, Dr. Rork changed his opinion. Dr. Rork had not evaluated Zwerin's disability, but had been led to believe his role was only as a passive observer of Zwerin's progress. Maccabees stopped paying benefits to Zwerin in March 1993, and Northwestern stopped paying benefits in September 1993.

Zwerin admitted at trial that he filled out most of the monthly physician statements and the physicians signed them. He also admitted engaging in hiking, horseback riding, tennis, football, walking, jogging, and swimming during the period of his alleged disability. His exwife testified his activities did not change when he filed for disability benefits, that he kept a cane in the closet to use if an investigator came to the door, and that he did not complain of discomfort. His son testified Zwerin would avoid playing basketball if he was afraid he was being watched.

II.

Sufficiency of the Evidence

Zwerin argues the evidence was insufficient to support the jury's verdicts. When a jury verdict is challenged on appeal, our review is limited to determining whether the record, viewed in the light most favorable to the prevailing party, contains substantial evidence to support the jury's decision. The jury has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact. Oklahoma Federated Gold and Numismatics v. Blodgett, 24 F.3d 136, 142 (10th Cir. 1994).

"The elements of a claim for relief for fraud are a false representation made by the defendant which is relied upon by the plaintiff to his damage, the asserted false representation must be made to induce action, and the plaintiff must reasonably believe the representation to be true." Lavoie v. Safecare Health Service, 840 P.2d 239, 252 (Wyo. 1992) (quoting Duffy v. Brown, 708 P.2d 433, 437 (Wyo. 1985)). In particular, Zwerin contends Northwestern failed to prove two required elements for a fraud claim: (1) false representation, and (2) that Northwestern reasonably believed and relied on any misrepresentation. Zwerin argues the purported misrepresentations are of medical opinion and not of fact. See Davis v. Schiess, 417 P.2d 19, 21 (Wyo. 1966) (fraud requires false representation of fact rather than opinion). He argues there was no actual reliance because Northwestern knew the true facts after its own investigation.

Zwerin's arguments are without merit. The evidence exhibits ample false statements of fact by Zwerin. He apparently lied to his treating physicians as to the level

of his pain and restrictions on his physical abilities, knowing the insurance companies would rely on the physicians' diagnoses. He prepared false medical reports to be signed by the physicians and misrepresented his disabilities in interviews with investigators for the insurance companies.

Under Restatement of Restitution § 28, a person is entitled to restitution when he or she pays money to another based on a mistake in fact induced by the fraud of the payee or the payee's purported agent, or of a third party if the payee has notice of the fraud or misrepresentation. The jury was properly instructed that fraud required false statements of fact and not merely opinion. There was sufficient evidence from which a reasonable jury could determine this requirement was satisfied. Likewise, there was ample evidence of Northwestern's reasonable reliance. Faced with the prospect of a claim of bad faith if it did not pay the claim, and with facially authentic physicians' reports supporting the claim, Northwestern could reasonably have relied on Zwerin's representations in choosing to pay the claim. Viewed in a light most favorable to the verdict, there was sufficient clear and convincing evidence to support a finding on each element of Northwestern's fraud claim.

Zwerin argues Northwestern knew or should have known the true condition of his health but still chose to pay the claim. He contends Northwestern volunteered to pay his claim and is not entitled to restitution. Zwerin has failed to preserve this issue on appeal because he requested a directed verdict on only the fraud claim and not on the claim of mistake. After the close of Northwestern's evidence, Zwerin apparently attempted to move for a directed verdict, but the court instructed the parties it would hear motions later and consider them as though they were made at the close of Northwestern's evidence.

Zwerin was subsequently given the opportunity to move for a directed verdict on the fraud claim and the motion was denied. On appeal, Zwerin argues a motion for directed verdict on the mistake claim was implicitly deemed made, but the record provides no support for this argument. Zwerin did not include a motion for directed verdict on the mistake claim. Failure to move for a directed verdict bars our review of the sufficiency of the evidence. F.D.I.C. v. United Pacific Ins. Co., 20 F.3d 1070, 1076 (10th Cir. 1994).

Instruction on Mistake

Zwerin argues the jury instruction on Northwestern's mistake counterclaim was erroneous because it failed to instruct that recovery on a theory of mistake is impermissible if the insurer honored the claim despite doubts as to its validity. Zwerin proffered such an instruction, which was rejected.

> We review the district court's refusal to give a particular jury instruction for abuse of discretion. In assessing whether the court properly exercised that discretion, a reviewing court must examine the instructions as a whole to determine if they sufficiently cover the issues in the case and focus on the facts presented by the evidence. The question of whether a jury was properly instructed is a question of law, and thus, our review is de novo.

United States v. Voss, 82 F.3d 1521, 1529 (10th Cir.), cert. denied 117 S. Ct. 226 (1996).

The law is not as Zwerin's proposed instruction purports it to be--that any doubt as to validity of the claim bars restitution based on mistake. See Restatement of Restitution § 10(1) and comment; see also Commercial Union Ins. Co. v. Postin, 610 P.2d 984, 991 (Wyo. 1980) ("[A]n insurer who acts in good faith to discharge a disputed obligation does not become a mere volunteer if it is ultimately determined that its policy did not apply.").

Zwerin also argues the jury was incorrectly instructed on Northwestern's burden of proof on the mistake counterclaim. The jury was instructed that Northwestern had the

burden of proving its mistake counterclaim by a preponderance of the evidence. Zwerin objected and argued clear and convincing evidence should be required.

To be entitled to rescission of a contract or reformation of the instrument on the basis of mutual mistake at the time of formation of the contract, the party seeking equitable relief must establish a reciprocal and common misunderstanding by clear and convincing evidence. E.g., Patel v. Harless, 926 P.2d 963 (Wyo. 1996); Cline v. Hoyle & Associates Ins., 697 P.2d 1176, 1178 (Idaho 1985). However, where restitution is sought for payment not due, plaintiff's burden under common law is by a preponderance of the evidence. Clark v. Luepke, 809 P.2d 752, 753 (Wash. App. 1991); cf. Rocky Mountain Turbines v. 660 Syndicate, 623 P.2d 758, 764 (Wyo. 1981). Here, Northwestern did not seek rescission of the contracts of insurance. It sought only restitution for benefits paid and premiums waived.

Professor Corbin's explanation of why a heightened burden of proof is required for reformation or rescission explains by implication why it is not necessary for restitution:

> The document itself, duly executed and introduced in court, has weight as evidence of mutual agreement. If supported by one party's testimony that there was no mistake of the sort justifying reformation, or that he never expressed assent to any agreement other than that stated in the writing, the testimony of the other party must be well supported in order to overcome the weight of the evidence against him.

3 Arthur L. Corbin, Corbin on Contracts § 615, pp. 745-46 (1960). See also Goodson v. Smith, 243 P.2d 163, 170-71 (Wyo. 1952) (presumption of validity and assent to signed instrument require proof of cancellation or rescission by clear and convincing evidence). Where the alleged mistake does not concern the terms of the contract itself, the validity of the executed agreement to which the parties apparently mutually assented is not under attack. Clear and convincing evidence is not, therefore, required to preserve the integrity

-9-

of the agreement. A preponderance of the evidence is sufficient to establish payment under the contract was made by mistake.

## Inconsistency of Verdicts

Zwerin contends the judgment incorrectly reflects the jury verdict. Specifically, Zwerin argues the judgment entered on Northwestern's fraud counterclaim is improper because proof of damages is an essential element of fraud and the jury awarded no damages on the fraud counterclaim. The jury was asked in separate questions whether Zwerin committed fraud, what period of time Northwestern paid Zwerin because of his fraud, whether Northwestern paid Zwerin because of mistake caused by or known to Zwerin, and what period of time Northwestern paid Zwerin because of mistake. The jury found Northwestern paid Zwerin as a result of mistake between the time he first claimed benefits and the time his benefits were terminated, and as a result of fraud from June 13, 1989, until his benefits were terminated. The jury was also asked to calculate the amount of benefits Northwestern was entitled to recover under each theory, and was told not to duplicate amounts by including them as both fraud and mistake damages. The jury found Northwestern was entitled to recover $971,299.10 under the mistake theory, the full amount requested. The jury awarded no damages under the fraud theory. After the verdict was announced, Northwestern's counsel suggested the verdict was inconsistent because the jury awarded no damages for fraud although it found Zwerin had committed fraud. The court rejected this concern and found the jury had simply followed its admonition not to duplicate damages. Zwerin's counsel did not object to either the verdict or the court's harmonizing of the verdict before the jury was discharged.

-10-

Zwerin later filed a motion for new trial asserting the jury's verdict was inconsistent and asking the court to amend the judgment to reflect that the jury did not return a verdict against Zwerin on the fraud claim. Although the court may not enter judgment on the general verdict when answers to special interrogatories are inconsistent, see Fed. R. Civ. P. 49(b), the district court has a duty to view the answers in special interrogatories and the general verdict in a consistent way if possible to avoid retrial. Harvey v. General Motors Corp., 873 F.2d 1343, 1347 (10th Cir. 1989). If there is any view of the case which makes the jury's answers consistent, it must be viewed that way. A new trial is required only where the jury verdicts are logically incompatible. Id. The district court adopted a view of the case which rendered the answers to special interrogatories consistent with the general verdict on the fraud claim. That view is coherent, logical, and consistent with the instructions. The court did not err in adopting that view. Zwerin's interpretation would require us to conclude the jury did not intend to find for Northwestern on all elements of the fraud counterclaim despite its general verdict. This we will not do. See id.

Prejudgment Interest

Zwerin's initial argument against prejudgment interest is again based on his misapplication of the principle that the payor's doubt prevents restitution. He also argues prejudgment interest cannot accrue until the creditor has made a demand for recovery. Finally, he argues it was improper to award prejudgment interest on the waived life insurance premiums because Northwestern did not lose use of any money. "A district court's award of prejudgment interest is generally subject to an abuse of discretion

standard of review on appeal. However, any statutory interpretation or legal analysis underlying such an award is reviewed de novo." Driver Music Co. v. Commercial Union Ins. Companies, 94 F.3d 1428, 1433 (10th Cir. 1996).

Under Wyoming law, prejudgment interest is recoverable, and indeed mandatory, when the claim is readily computable by simple mathematical computations and the debtor receives notice of the amount due before interest starts to run. See Bowles v. Sunrise Home Center, 847 P.2d 1002, 1005 (Wyo. 1993). A determination of whether the factual requirements for an award of prejudgment interest are satisfied is reviewed under a "clearly erroneous" standard. Northwestern's claim was certainly readily computable as the sum of all benefits paid to Zwerin as a result of Zwerin's fraud or Northwestern's mistake. On restitution claims, interest is due from the date of receipt of the benefit if the benefit was retained with knowledge of the payor's mistake. The Law of Quasi Contract § 34 (1913). The notice requirement is satisfied not by a demand from the transferor, but by the transferee's knowledge of the amount to be paid. E.g., Horseshoe Estates v. 2M Co., 713 P.2d 776 (Wyo. 1986). Because Zwerin falsified his medical condition in order to obtain benefits, he had actual knowledge of his obligation to Northwestern.

Finally, Zwerin's argument that interest on waived life insurance premiums was improper because no money actually changed hands has no merit. Prejudgment interest restores to the recipient the time value of money lost because it was not timely received. E.g., Goodwin v. Upper Crust of Wyoming, 624 P.2d 1192, 1198 (Wyo. 1981). Had Zwerin timely paid his premiums, Northwestern would have had the time value of those premiums, of which it was deprived because the premiums were waived.

Admission of Evidence Under Incontestability Clause

The disability policies contained incontestability clauses which prevented the insurers from rescinding the policies or denying claims after expiration of the contestability period based on any misstatements made by Zwerin in his policy applications. Based on these clauses, Zwerin sought through a motion in limine to exclude any evidence of his reported financial or health conditions on the applications. The district court denied the motion. Zwerin argues the denial of his motion amounted to a refusal to enforce the incontestability clauses. However, his argument arises in the context of a bad faith claim against the insurers for terminating his benefits. Zwerin did not and has not asserted a breach of contract claim based on alleged use of misstatements in the policy applications in breach of the incontestability clauses. Consequently, admission of Zwerin's representations in his applications is governed by the rules of evidence rather than the principles of contract.

We review a district court's admission of evidence for an abuse of discretion and will reverse the district court "only if we have a firm and definite belief that the trial court made a clear error in judgment." Faulkner v. Super Valu Stores, 3 F.3d 1419, 1433 (10th Cir. 1993).

Zwerin does not argue that representations made in the applications are excluded by the rules of evidence. His misstatements were relevant to matters contested at trial. Specifically, his false statements overestimating his income, and the fact that he filed a claim within weeks of the end of the incontestability period reveal his plan and intent to defraud Northwestern. In addition, absence of certain facts in the application, such as a prior knee injury, tends to show Zwerin's use of that prior injury to sustain his disability

claim was disingenuous.  The district court did not abuse its discretion in refusing

Zwerin's motion to exclude all references to information in the policy applications.


Judicial Misconduct

Zwerin alleges he was denied a fair trial because of judicial misconduct in the

admission of evidence from the insurers' case files.  Because of the broad discretion given

to the district court in determining the conduct of trial, the standard for reversal based on

judicial misconduct in a civil trial is quite high.  Vasey v. Martin Marietta Corp., 29 F.3d

1460, 1469 (10th Cir. 1994).  The deference due the district court in reviewing the

exclusion of evidence is particularly great when its decision implicates the district court's

fundamental control over the trial process.  Gracia v. Lee, 976 F.2d 1344, 1345 (10th Cir.

1992).

Prior to trial, the parties stipulated to "admission" of the insurers' claim files.  At

trial, Zwerin attempted to introduce certain exhibits from Northwestern's claim file,

arguing the documents had already been ruled admissible, and Northwestern objected.

The district court sustained Northwestern's objection on the ground that the parties' prior

agreement only established foundation for the entire claim file and did not otherwise

establish that the entire contents of the claim file were admissible.

From the record, it is apparent there was considerable confusion as to the nature of

the stipulations regarding admissibility of the claim files.  In plaintiff's objection to the

exhibits of defendants filed after a telephone conference, Zwerin's counsel stated:  "It is

presumed and insisted by the plaintiff that all exhibits will still be connected up through

testimony, in order to determine its relevance to particular issues."  Appellant's append. I

-14-

at 1. Defense counsel had individually introduced each document sought to be admitted from the claim files and Zwerin did not object to any of them. When defense counsel objected to a document Zwerin attempted to introduce, the court determined admission of each document from one of the claim files would be determined on a case-by-case basis to exclude documents that were inadmissible under the rules of evidence.

On appeal, Zwerin does not argue any of the excluded evidence was admissible under the rules of evidence. Instead, he argues the district court placed his counsel in a bad light before the jury by altering the earlier agreement regarding admissibility. There was no abuse of the district court's considerable discretion. Moreover, any error would be harmless in that the court did no more than exclude evidence Zwerin does not otherwise argue was admissible.

Zwerin also complains he was prejudiced when the court asked his counsel to edit deposition testimony shown by video or read to the jury. The court asked the parties to strive to eliminate any "unnecessary nonprobative portions," append. II at 386, and "use the fast forward liberally," append. II at 389. At one point, the court instructed counsel: "Let me say this again, gentlemen: That the jurors are really upset about the pace of the trial, and when I look at a deposition like this that is 155 pages long, I really trust that you have purged it so that we get down to basics and we [] get this done quickly." Append. II at 394. Zwerin does not claim admissible evidence was excluded as a result of the court's attempt to keep the trial on course, but claims the court's requests may have caused the jury to view deposition testimony as less important or persuasive than testimony of witnesses present at trial. Zwerin did not object before the district court and cannot raise the issue for the first time on appeal. See In re Walker, 959 F.2d 894, 896 (10th Cir.

-15-

1992).  In any case, the jury was explicitly instructed that testimony of witnesses not present at trial was entitled to the same consideration as other testimony.

Finally, Zwerin argues the district court improperly permitted John Janzen, a doctor of vocational rehabilitation, to testify that Zwerin was capable of performing tasks required of a pharmacist.  Zwerin argues Janzen was not properly qualified as an expert, his testimony was irrelevant, and his appearance was unduly prejudicial because Janzen is an amputee.

The court's decision to accept the qualifications of an expert will not be overturned absent a clear abuse of discretion.  Compton v. Subaru of America, 82 F.3d 1513, 1517-18 (10th Cir.), cert. denied 117 S. Ct. 611 (1996).  In view of Janzen's qualifications established by the record, the court did not err in permitting him to testify as an expert.  His testimony was extremely relevant and his physical condition was immaterial to his qualifications.  Moreover, references to his physical condition were initiated by Zwerin's counsel, which bar this complaint on appeal.  See A.E. v. Independent School Dist. No. 25, 936 F.2d 472, 477 (10th Cir. 1991).

AFFIRMED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge