**EMPLOYERS REINSURANCE CORPORATION, Plaintiff,**

v.

**MID–CONTINENT CASUALTY COMPANY, Defendant.**

**No. CIV.A. 01–2058–KHV.**

United States District Court, D. Kansas.

May 1, 2002.

See also, 202 F.Supp.2d 1221.

---

32. MET.0003.

Douglas R. Richmond, Gerald A. King, Carlton D. Callenbach, Armstrong Teasdale LLP, Kansas City, MO, for Plaintiff.

Vincent F. O'Flaherty, Christopher J. Carpenter, Niewald, Waldeck & Brown, P.C., Kansas City, MO, for Defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Employers Reinsurance Corporation ("ERC") brings suit against Mid–Continent Casualty Company ("MCCC") for a declaratory judgment whether the parties' reinsurance agreement requires it to reimburse MCCC for litigation expenses which MCCC incurred in three declaratory judgment suits between MCCC and its insureds.[1] ERC and MCCC each ask the Court to determine the scope of coverage under the reinsurance agreement. ERC also asserts claims for breach of contract, misrepresentation and unjust enrichment on account of declaratory judgment litigation expenses which it previously paid to

---

1. Two types of litigation expenses are at issue in this case: (1) legal fees and expenses which MCCC was required to reimburse its insureds as a result of judgments entered in declaratory judgment actions; and (2) legal fees and expenses which MCCC incurred in such actions. This opinion refers to both types of expenses as "declaratory judgment litigation expenses."

MCCC. MCCC has filed counterclaims for breach of contract and breach of duty of good faith and fair dealing based on ERC's failure to pay current claims for such expenses. MCCC also asserts a counterclaim for estoppel and advances affirmative defenses of waiver and estoppel based on ERC's past payment of such claims. This matter comes before the Court on *Plaintiff Employers Reinsurance Corporation's Motion To Strike Defendant's Expert Robert F. Hall ("Motion To Strike Hall")* (Doc. # 72) filed February 8, 2002 and *Defendant Mid–Continent Casualty Company's Motion To Strike And Exclude The Testimony Of James Powers ("Motion To Strike Powers")* (Doc. # 69) filed February 8, 2002. For reasons set forth below, the Court sustains both motions in part.

### Standards For Admitting Expert Testimony

 The Court has broad discretion in deciding whether to admit expert testimony. *See Kieffer v. Weston Land, Inc.,* 90 F.3d 1496, 1499 (10th Cir.1996). Rule 702, Fed.R.Evid., provides that a witness who is qualified by knowledge, skill, experience, training or education may testify in the form of opinion as to scientific, technical or other specialized knowledge if such testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. The touchstone of Rule 702 is helpfulness of the expert testimony, a condition that goes primarily to relevance. *See BioCore, Inc. v. Khosrowshahi,* 183 F.R.D. 695, 699 (D.Kan.1998) (quoting *Miller v. Heaven,* 922 F.Supp. 495, 501 (D.Kan.1996)). Thus, the Court must determine whether the proffered evidence would be helpful to the trier of fact. *See BioCore,* 183 F.R.D. at 699. In so doing, the Court examines specific subject areas of proposed expert testimony to ascertain whether each is sufficiently tied to the facts of the case so that it will be helpful to the fact finder. *See id.* Any doubts should be resolved in favor of admissibility. *See id.*

### Analysis

### I. Motion To Strike Hall

Robert F. Hall is the designated expert for MCCC. Hall has worked in the insurance industry for more than 40 years. From 1961 to 1974, he worked as claims adjuster, suit adjuster, claims supervisor, suit supervisor and assistant claims manager for Liberty Mutual Insurance Company. From 1974 to 1987, he worked at American Re–Insurance Company as claims supervisor, assistant secretary, vice-president, manager and senior claims officer. From 1987 to 1997, he held the positions of senior vice president, executive vice president, manager and senior claims officer for Reliance National Insurance Company. Since 1997, Hall has been self-employed as an insurance consultant, expert witness and arbitrator. Hall attended Northern Illinois University from 1959 to 1961, but he does not have a college degree. In 1972 and 1974, he attended management seminars at Wharton School and Northwestern University, respectively. In 1987, he attended an Aspen Institute program on justice in society. Hall does not hold any professional insurance designations. Over the years, he has been a member of various professional associations involving insurance and reinsurance. He is certified as an arbitrator by ARIAS–US, a reinsurance and insurance arbitration society. Hall has been selected to act as arbitrator in more than 50 insurance and reinsurance disputes. He has testified as an expert witness in at least 14 actions.

According to his expert report, Hall proposes to testify regarding the following areas: (1) custom and practice in the insurance industry regarding the general duties and expenses of an insurance company with regard to investigating, evaluat-

ing, negotiating and settling claims; (2) the extent of coverage under the extra-contractual obligations provision in the reinsurance agreement; (3) interpretation of the word "loss" in the reinsurance agreement, based on custom and practice in the insurance industry; (4) his understanding of the terms "waiver" and "estoppel"; (5) his understanding of the duty of utmost good faith and fair dealing and reasons for imposing the standard; (6) how ERC kept informed of the status of underlying declaratory judgment actions; (7) the fact that ERC did not inform MCCC of its belief that the reinsurance agreement did not cover declaratory judgment litigation expenses; (8) his opinion that such legal fees and expenses fall within the definition of "claims expenses" and are therefore covered under the reinsurance agreement; (9) his opinion that MCCC's payment of legal fees which policyholders incurred in declaratory judgment actions is a covered "loss" under the reinsurance agreement; (10) efforts by reinsurers since 1983 to avoid paying declaratory judgment litigation expenses and ongoing discussion in the insurance industry regarding same; and (11) his conclusion that ERC denied MCCC's claims in bad faith. *See* Hall's Report at 4–7, Exhibit A to *Memorandum In Support Of Plaintiff Employers Reinsurance Corporation To Strike Defendant's Expert Witness Robert F. Hall* ("ERC Memorandum") (Doc. # 73) filed February 8, 2002.

## A. Hall's Qualifications

■ ERC contends that Hall is not qualified to testify about industry custom regarding reinsurance agreement coverage of declaratory judgment litigation expenses. Specifically, ERC maintains that Hall's opinions are not based on education

and that his experience in the reinsurance business is limited to 13 years of employment with one reinsurance company. Rule 702 imposes an important gate-keeping function with regard to the admissibility of expert opinions. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In order to determine whether Hall's expert opinion is admissible, the Court must determine whether Hall is qualified by "knowledge, skill, experience, training, or education" to render an opinion. *See* Rule 702, Fed. R.Evid.; *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir.2001).[2]

MCCC counters that Hall's work experience and training qualify him to testify as an expert. The Court has carefully reviewed Hall's credentials and finds that his background and experience qualify as "specialized knowledge" gained through "experience, training, or education." Rule 702, Fed.R.Evid. ERC's arguments go to the weight of his testimony, not its admissibility. *See McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir.1995). The Court therefore concludes that Hall is qualified to testify as an expert in the case.

## B. Legal Conclusions

■ ERC asserts that Hall's interpretation of the reinsurance agreement constitutes a legal conclusion which is an improper subject of expert testimony. MCCC denies that Hall's opinions are legal conclusions, and contends that his opinions are relevant to (1) understanding technical terminology which is not adequately defined in the agreement; (2) explaining custom and industry with respect to ambiguous terms; and (3) determining the parties' intentions and MCCC's rea-

---

**2.** ERC does not argue that Hall's opinions are not "reliable" under the principles set forth under *Daubert* and *Kumho Tire Co., Ltd. v.*

*Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

sonable expectations under the reinsurance agreement. Under Rule 704(a), Fed. R.Evid., an expert witness may testify in the form of an opinion or inference, even if the opinion or inference embraces an ultimate fact issue. *See A.E. By and Through Evans v. Indep. Sch. Dist. No. 25,* 936 F.2d 472, 476 (10th Cir.1991) (citations omitted). An expert, however, may not apply the law to the facts of the case to form legal conclusions. *See id.* (citing *United States v. Jensen,* 608 F.2d 1349, 1356 (10th Cir.1979)); *Frase v. Henry,* 444 F.2d 1228, 1231 (10th Cir.1971). Nevertheless, an expert may refer to the law in expressing his opinion. *See id.* (citing *Specht v. Jensen,* 853 F.2d 805, 809 (10th Cir.1988)).

■ Hall's opinions regarding contract interpretation are admissible if the Court determines that the reinsurance agreement is ambiguous. Under Oklahoma law, the Court interprets an insurance contract in accordance with ordinary contract law principles.[3] *See IDG, Inc. v. Cont'l Cas. Co.,* 275 F.3d 916, 921 n. 2 (10th Cir.2001) (interpreting Oklahoma law). If it is unambiguous, the Court interprets the agreement according to the plain meaning of the words in the policy. *See id.* If a policy term is ambiguous, however, evidence of extrinsic facts and circumstances which demonstrate the parties' intent is admissible, and construction of the contract becomes a mixed question of law and fact for the jury to determine under proper instructions. *See Fowler v. Lincoln County Conservation Dist.,* 15 P.3d 502, 507 (Okla. 2000).

The Court has not determined whether the reinsurance agreement is ambiguous.[4] *See Max True Plastering Co. v. U.S. Fid. & Guar. Co.,* 912 P.2d 861, 869 (Okla.1996)

(court determines as matter of law whether insurance contract is ambiguous). If the Court finds that the agreement is not ambiguous, Hall's opinions regarding contract interpretation are not admissible. *See Wicks v. Riley County Bd. of County Comm'rs,* 125 F.Supp.2d 1282, 1290 (D.Kan.2000) (court will not consider inadmissible legal conclusion by expert); *Austin Fireworks, Inc. v. T.H.E. Ins. Co.,* No. 90–1341–FGT, 1993 WL 484214, at *1 (D.Kan. Aug. 2, 1993) (interpretation of unambiguous insurance policy not proper subject for expert testimony). To the extent that the agreement is ambiguous, however, Hall's opinions may be relevant to its meaning in light of insurance industry custom and practice. *See Oxley v. Gen. Atl. Res., Inc.,* 936 P.2d 943, 946 (Okla.1997) (industry custom and usage relevant when interpreting ambiguous contract). Therefore the Court will not strike Hall's testimony regarding contract interpretation at this time.

ERC also argues that Hall's opinions as to the existence of a duty of good faith and the meaning of "waiver" and "estoppel" constitute inadmissible legal conclusions. MCCC argues that Hall's opinions are relevant to ERC's argument that it inadvertently paid claims for declaratory judgment litigation expenses. Upon careful review, for reasons explained below, the Court concludes that Sections III, IV, V, VI and X of Hall's expert report are inadmissible.

### 1. Definitions Of "Waiver" And "Estoppel"

■ Section III of Hall's expert report is comprised of two paragraphs. In the first paragraph, Hall interprets the evi-

---

3. The parties have stipulated that Oklahoma law governs the interpretation of the reinsurance agreement. *See Pretrial Order* (Doc. # 62) filed January 30, 2002 at 2.

4. Both ERC and MCCC have filed summary judgment motions in this regard.

dence regarding ERC's conduct with respect to past payments of declaratory judgment litigation expenses:

> III. Prior to the cancellation of the Reinsurance Agreement on April 1, 2000, ERC had never raised an objection to indemnifying MCCC for ERC's share of declaratory judgment expenses. At least three other claims ... have been identified by MCCC in which declaratory judgment expenses had been paid by ERC during a thirty year reinsured/reinsurer relations.

Hall Report at 5. Hall concludes that on at least three occasions, without objection, ERC reimbursed MCCC for declaratory judgment litigation expenses. The normal experiences of qualified jurors will enable them to draw their own conclusions on this issue, however, based on the evidence at trial. Expert testimony on this issue is not necessary. *See Campbell v. Clark,* 283 F.2d 766, 767 (10th Cir.1960); *Getter v. Wal–Mart Stores, Inc.,* 829 F.Supp. 1237, 1238 (D.Kan.1993), *aff'd,* 66 F.3d 1119 (10th Cir.1995).

■ In the second paragraph, Hall attempts to define the terms "waiver" and "estoppel":

> During my forty plus years of handling claims I have learned that there is a doctrine know[n] as waiver and estoppel. Waiver, as I have come to understand it, is the intentional or voluntary relinquishment of a known legal right. Estoppel is the legal result of a waiver, or of conduct from which a waiver can be implied. A waiver is implied where one party has pursued a course of conduct with reference to the other party as to evidence an intention to waive its rights.

Hall Report at 6. The Court will instruct the jury with regard to the legal meaning of these terms. Expert testimony on the subject is not appropriate. *See, e.g., Werth v. Makita Elec. Works, Ltd.,* 950 F.2d 643, 650 (10th Cir.1991) (court—not

expert—instructs jury on legal standards); *F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1258 (2d Cir.1987) (same).

### 2. Duty Of Utmost Faith And Fair Dealing

■ In Section IV of his expert report, Hall recites his understanding of the duty of utmost good faith and fair dealing and the policy reasons for imposing such duty:

> IV. Also during my forty plus years of handling claims, I am aware that there is an implicit agreement and understanding in all contracts of reinsurance that there is a duty of utmost good faith and fair dealing. Utmost good faith is a basic requirement of central importance to the essential structure of reinsurance. This duty is reciprocal and imposed on both the reinsured and the reinsurer. Without this implicit duty and obligation applicable to all contracts of reinsurance, the cost of reinsurance would increase due to the reinsurer's increased expenses associated in underwriting. Those increased attendant expenses would ultimately be borne by the policyholders, thereby increasing the premium of the policyholders.

Hall Report at 6. The Court will determine whether a duty exists and so instruct the jury. *See, e.g., F.J. Joseph, Inc. v. Lida Adver., Inc.,* 2 F.Supp.2d 1425, 1428 (D.Kan.1998) (whether legal duty exists is question of law for court). Expert testimony on the subject is improper. *See Werth,* 950 F.2d at 650; *F.H. Krear,* 810 F.2d at 1250.

### 3. ERC's Actions

■ Sections V and VI of Hall's expert report summarize ERC's actions with respect to keeping itself informed of the underlying declaratory judgment actions and failing to advise MCCC that it did not believe that the reinsurance agreement

covered declaratory judgment litigation expenses:

V. Upon being notified of the underlying claims, ERC regularly corresponded with MCCC, made inquiries as to the status of the coverage litigation, received copies of coverage counsel's periodic reports, met with coverage counsel, conducted claims audits of the underlying claims files at MCCC's offices, and took other related steps to keep itself informed of the status of the declaratory judgment actions.

VI. ERC at no time prior to receiving a request for reimbursement from MCCC for the three claims advise[d] MCCC that it did not believe declaratory judgment expenses were covered by The Reinsurance Agreement.

Hall Report at 6. Expert testimony on these subjects is not necessary. The normal experiences and qualifications of lay jurors will enable them to draw their own conclusions on these issues, based on the evidence at trial. *See Campbell,* 283 F.2d at 767; *Getter,* 829 F.Supp. at 1238.

### 4. Whether ERC Breached Duty Of Good Faith

■ In Section X of his expert report, Hall opines that ERC has breached its duty of utmost good faith and fair dealing:

X. ERC did not and still does not have a reasonable basis for denying payment to MCCC for MCCC's declaratory judgment expenses. This is a frivolous and unfounded refusal by ERC to honor the MCCC claims. ERC's pattern of utter disregard for its reinsured, MCCC, is antithetical to all basic precepts of utmost good faith fundamental to the reinsurance industry. The conduct of ERC has been unreasonable and unfair and constitutes bad faith owing to its violation of the duty of utmost good faith and fair dealing in its performance in dealing with MCCC's reinsurance claim.

Hall Report at 7. This portion of Hall's opinion constitutes an impermissible attempt to apply the law to the facts of the case to form a legal conclusion. *See Evans,* 936 F.2d at 476; *see also Breezy Point Coop., Inc. v. CIGNA Prop. & Cas. Co.,* 868 F.Supp. 33, 36 (E.D.N.Y.1994) (improper to offer "conclusions as to the legal significance of various facts [to be] adduced at trial") (quoting *Marx & Co., Inc. v. Diners' Club Inc.,* 550 F.2d 505, 508 (2d Cir.1977)).

### II. Motion To Strike Powers

ERC's designated expert is James J. Powers, a licensed attorney in the State of New York. Powers has worked in the insurance industry for 40 years in various claims and legal positions with reinsurers, insurers and self-insureds. From 1977 to 1995, Powers was senior vice president, corporate secretary, general counsel and senior claims counsel for Constitution Reinsurance Corporation. He is currently self-employed as an arbitrator and expert witness. Powers proposes to testify regarding three areas: (1) whether the reinsurance agreement covers declaratory judgment litigations expenses; (2) whether ERC's past payment of such claims constitutes waiver or estoppel; and (3) whether ERC has breached its duty of good faith and fair dealing. Powers' opinion in all three areas is based on custom and practice in the industry. *See* Powers Deposition at 21 1.5 to 22 1.3, Exhibit 1 to *Memorandum In Opposition To Defendant's Motion To Strike Plaintiff's Expert James Powers ("ERC Opposition")* (Doc. # 79) filed February 28, 2002.

### A. Coverage Under Reinsurance Agreement

MCCC contends that Powers' opinion regarding coverage under the reinsurance agreement is not helpful to the fact finder because "there is nothing of substance in

this opinion to warrant use at trial." *MCCC Memorandum* at 6. Section 1 of Powers' expert report states in relevant part:

> In Article III the Agreement states "The word 'loss' shall mean only such amounts: (a) within applicable policy limits as are actually paid by the REINSURED in settlement of claims or in satisfaction of awards or judgments..." A loss is therefore the occurrence covered by the policy. We define a loss as a basis to see what claims (later defined) expenses will be covered by the reinsurance contracted. The losses covered are property damage and personal injury losses incurred by third parties for which the insured is allegedly liable. Therefore, only claim expenses concerning those losses will be covered by the reinsurance Agreement.
>
> Article XIII of the Agreement states: "The REINSURED agrees that it will investigate and will settle or defend all claims arising under policies with respect to which reinsurance is afforded by the agreement..." The phrase "arising under policies" is significant in that it limits the investigation and defenses to the third party liability claims arising under the coverage afforded by the policies issued by MCCC.
>
> The MCCC policy I reviewed provides for Supplementary Coverages to be paid. These coverages included costs incurred in claims or suits alleging bodily injury or property damage. The policy provides other coverages and other expense payments none of which concern the issues in this litigation. No mention is made in the policy of coverage for suits brought by the insured or insurer contesting coverage.

Powers Report at 2–3, Exhibit 2 to *Memorandum In Support Of Defendant Mid–Continent Casualty Company's Motion To Strike And Exclude Testimony Of James Powers* ("*MCCC Memorandum*") (Doc. # 70) filed February 8, 2002. Just as the Court did not strike Hall's opinion regarding contract interpretation at this time, the Court will not strike Powers' testimony at this time. To the extent that the reinsurance agreement is ambiguous, Powers' opinions may be relevant to determining the meaning of policy terms in light of insurance industry custom and practice. *See, e.g., Oxley,* 936 P.2d at 946.

**B. Waiver And Estoppel**

 Section 2 of Powers' expert report states in relevant part:

> The Reinsurance Billing form submitted by MCCC to ERC provides an area for the listing of claims expenses. It calls for the identification of the "type of expenses". [sic] If The [sic] type of expense is identified as one that is covered by the policy, ERC would pay it. If there was no indication that the expense was not covered, there would be no reason for not paying the requested amount. Therefore, if the expense submitted was for DJ expenses, but not classified as such, it would be paid. If ERC paid DJ expenses that were not identified as such, they can not now be held to have waived their right or be estopped from disclaiming coverage for DJ expenses in this litigation.

Powers Report at 3. MCCC contends that Powers' opinion is not sufficiently tied to facts of this case because he did not review the claims files in which ERC paid declaratory judgment litigation expenses. The record is not sufficiently developed, however, for the Court to agree. To the extent Powers may opine that waiver and estoppel do not apply to ERC in this case, his opinion constitutes a legal conclusion. *See Breezy Point,* 868 F.Supp. at 36. To the extent Powers may opine regarding industry customs and practices concerning payment of declaratory judgment litigation expenses, his testimony may be relevant at

trial. The Court reserves ruling on this issue until such time.

### C. Good Faith And Fair Dealing

 Section 3 of Powers' expert report states in relevant part:

> From the correspondence and other materials I have reviewed, ERC did not breach its duty of good faith and fair dealing or duty of utmost good faith in now denying coverage of DJ expenses. Nor would it be a breach of these duties to start this litigation as a means of resolving the dispute over the coverage of DJ expenses. Sufficient time elapsed and correspondence took place to know that the dispute was not resolvable without litigation.

Powers Report at 3. MCCC argues that Powers' opinion is not sufficiently tied to facts of this case because he has not reviewed the four claims files in which ERC paid declaratory judgment litigation expenses. The Court does not address this argument because it finds that this portion of Powers' opinion is not admissible for other reasons. The Court will not allow Powers to articulate a legal conclusion based on the facts of the case. *See Evans,* 936 F.2d at 476; *Breezy Point,* 868 F.Supp. at 36. The Court therefore strikes Section 3 of Powers' report.

**IT IS THEREFORE ORDERED** that *Plaintiff Employers Reinsurance Corporation's Motion To Strike Defendant's Expert Robert F. Hall* (Doc. # 72) filed February 8, 2002 be and hereby is **SUSTAINED in part** and **OVERRULED in part**. The Court strikes Sections III, IV, V, VI and X of Hall's expert report.

**IT IS FURTHER ORDERED** that *Defendant Mid–Continent Casualty Company's Motion To Strike And Exclude The Testimony Of James Powers* (Doc. # 69) filed February 8, 2002 be and hereby is **SUSTAINED in part** and **OVERRULED in part**. The Court strikes Section 3 of Powers' expert report.